Manuel Guzmán Rodríguez, demandante y apelado, v. Central San José, Inc., demandada y apelante.

Núm. 8445.—*Sometido:* Abril 15, 1942. *Resuelto:* Mayo 18, 1942.

*Monserrat, Jr., De la Haba & Monserrat y R. Baragaño, Jr.,* abogados de la apelante; *Mariano y Federico Acosta Velarde,* abogados del apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Esta acción se estableció en la corte inferior en solicitud de una sentencia por la que se declare extinguido y se ordene la cancelación de un derecho de servidumbre de paso de vía sobre una finca propiedad del demandante. La causa de acción está predicada en que según el demandante la servidumbre en cuestión, constituída el 4 de noviembre de 1910 a favor de la corporación doméstica Central Vannina, de quien deriva su título la demandada, por ser una servidumbre personal, quedó extinguida al disolverse la corporación Central Vannina el 24 de marzo de 1939, y en todo caso que dicha servidumbre quedó extinguida por haber transcurrido más de treinta años desde la concesión del expresado derecho de paso de vía.

Así planteado el problema, la cuestión a resolver en este recurso es si dicha servidumbre constituída sobre una finca de cuatrocientas cuerdas de la cual es remanente la del demandante apelado, es una servidumbre predial o real, o si por el contrario es personal. Si lo primero, el gravamen subsiste mientras no se demuestre su extinción por alguna de las causas prescritas en el **artículo 482** del Código Civil, ed. 1930. Si lo segundo, es decir, si se trata de una servidumbre personal, como sostuvo con el **apelado la corte inferior**, tendríamos que concluir que la servidumbre quedó extinguida al disolverse la corporación a cuyo favor se constituyó.

Recurramos, pues, al título donde se constituyó la servidumbre, la escritura de 4 de noviembre de 1910 ante el notario Damián Monserrat y Simó. Por dicha escritura los dueños de la citada finca de cuatrocientas cuerdas la arrendaron a Central Vannina por un término que expiró el 30 de junio de 1922, y en el mismo documento constituyeron la servidumbre. Mas como no está en controversia el contrato de arrendamiento, prescindiremos de sus pactos y dirigiremos toda nuestra atención a las cláusulas concernientes a la ser-

vidumbre. Son las enumeradas séptima y novena en la referida escritura y literalmente dicen así:

"*Séptima:* Los dueños de la finca antes descrita le conceden a la corporación Central Vannina a perpetuidad el derecho de entrar, pasar y salir por los terrenos de la misma finca, construyendo la corporación Central Vannina, para utilizar esta servidumbre, una vía férrea permanente que ocupará el terreno que sea necesario para la vía y paso de trenes, en la que como condición de la servidumbre ha de dejar dos pasos a nivel, y hacer en la finca uno o dos desvíos de largo suficiente para dos o tres vagones para uso de 'sus propietarios o posteriores arrendatarios, así como también es su condición que una vez vencido el arrendamiento de la finca, si no se prorrogase, la Central Vannina aceptará y molerá previo contrato las cañas que se cultiven en la finca con las mismas condiciones con que acepte y muela las del colono más favorecido.

"     "     *     *     *     *     *     *     *

"*Novena:* El presente contrato de arrendamiento con la concesión de entrada y salida y paso por la finca, y sus demás pactos una vez inscrito en el Registro de la Propiedad surtirá efectos de derecho real como carga impuesta a la finca antes descrita y obligatoria para sus posteriores adquirentes. Conforme a esta cláusula los dueños de la finca, en caso de venderla, deberán imponer a sus compradores el cumplimiento del presente contrato."

Antes de seguir adelante, conviene aclarar que la Central San José, Inc., es la sucesora en interés de la corporación Central Vannina, razón por la cual aquélla y no esta última es la demandada en este pleito. También conviene consignar aquí que al llamarse a la vista de este caso en la corte inferior las partes, en presencia de la corte, celebraron ciertas estipulaciones que en lo pertinente pueden resumirse así:

(*a*) Que la finca de treinta y cinco cuerdas del demandante Dr. Guzmán Rodríguez se halla arrendada actualmente a la Sociedad Agrícola de Río Piedras por cesión que le hiciera Central Vannina del arrendamiento que tenía sobre la indicada finca.

(*b*) Que en un predio de diez y ocho cuerdas y fracción, radicado en el barrio Monacillos de Río Piedras, antes de la

Central Vannina y propiedad hoy de la Central San José, Inc., radica la factoría que antes pertenecía a la Central Vannina y que adquirió la demandada por compra a aquélla; que en dicho predio se halla la estación principal del ferrocarril de la factoría, con una extensión de 41,058.67 metros, con desvíos, ramales, etc.

(c) Que la Central San José entra y sale de la finca propiedad del demandante; que repara y utiliza la vía durante el período de zafra y que por dicha vía discurren los trenes de la ameritada Central para la carga de azúcar, cañas, abonos, etc., en relación con las operaciones de siembra y molienda de cañas de azúcar de la Central.

Además de la escritura de arrendamiento de que antes hemos hecho referencia, se ofreció y fué admitida en evidencia una certificación del Registro de la Propiedad de la que aparece que la finca de treinta y cinco cuerdas propiedad hoy del demandante es el remanente de la finca de cuatrocientas cuerdas antes referida, apareciendo además de dicha certificación que el contrato de arrendamiento, incluyendo la constitución de la servidumbre, aparece inscrito en el Registro de la Propiedad desde el 23 de enero de 1912, con anterioridad, desde luego, a la adquisición de la finca de treinta y cinco cuerdas por parte del demandante.

A base de esta prueba y luego de una discusión sobre lo que entiende el juez inferior por servidumbres reales y servidumbres personales, y de cuál es, a su juicio, el criterio aplicable para distinguirlas, llega a la siguiente conclusión:

"Tenemos nuestras dudas de que la servidumbre a que nos hemos estado refiriendo pueda considerarse como una servidumbre personal, ya que en la escritura donde se constituyó la misma no se describe el predio sirviente. Sí estamos seguros de que no es una servidumbre real. Aceptando que la misma es una servidumbre personal, quedó extinguida con la disolución de la Central Vanina, Inc. y no podía ser traspasada a la demandada o a persona alguna, por ser un derecho personalísimo. *La Iglesia Católica* v. *El Pueblo*, 11 D.P.R. 470; *López* v. *Registrador*, 44 D.P.R. 897, 900."

■ Para la mejor inteligencia de la cuestión legal envuelta en este caso, nos parece conveniente ir al origen de esta institución jurídica y seguir, aunque brevemente, su evolución, hasta que ha llegado a ser lo que es en nuestro Derecho. Dice Scaevola que la palabra "servidumbre" no existió en los primeros tiempos del Derecho Romano; que originalmente las servidumbres reales se denominaron *jura praediorum* (derechos de los predios) y que posteriormente se denominaron *servitutes*, denominación ésta que abarcaba otros derechos distintos de los *jura praediorum*, como el usufructo, uso y habitación, llamándose servidumbre *real* si el beneficio recaía en favor de un fundo, y *personal* si a favor de una persona. 10 Scaevola, Código Civil, 134.

En el Derecho Romano las únicas servidumbres personales eran de usufructo, uso y habitación, y bajo Justiniano, se adicionó el derecho a los servicios del esclavo de otro, *operae servorum*.

Refiriéndose a las servidumbres en el Derecho Romano, dice el Profesor Eugene Petit en su "Tratato Elemental de Derecho Romano", pág. 250:

"Unidas también a la suerte de la persona que las disfruta, mueren con ella. Su número, además, es muy limitado. Durante mucho tiempo, el derecho civil sólo ha conocido el *usufructo* y el *uso*. Bajo Justiniano, se consideraban también como servidumbres personales la *habitación* y el derecho a los servicios del esclavo de otro, *operae servorum*."

Al efecto, en el Digesto se prescribía:

"Servitutes aut personarum sunt, ut usus et usufructus, aut rerum, ut servitutes rusticorum praediorum et urbanorum." Lib. 8º, tít. I, ley 1ª.

La Ley de Partidas siguió fielmente al Derecho Romano, como puede verse por la Ley 1, título XXXI, Part. 3ª., donde clasifica las servidumbres en reales y personales, diciéndose con respecto a las últimas:

"E aun es otra servidumbre, que gana·ome en las cosas agenas para pro de su persona (6), e non ha pro señaladamente de su heredad; assi como aver el usofructo, para esquilmar algunas heredades agenas; o aver el uso tan solamente, en la casa de morava, o en casas de otri; o en obras de algunos siervos menestrales, o labradores." Los Códigos Españoles, tomo 3, pág. 376.

Al redactarse el Código Civil español, sus autores, ajustándose a lo preceptuado en la base 12 al efecto de que el usufructo, el uso y la habitación se definirían y regularían "como limitaciones del dominio y formas de su división", les negó el carácter de servidumbre, pero encontrándose con otros derechos reales especiales aceptados y reconocidos en la legislación española, como los de pastos, leñas y otros semejantes, que aunque no eran estrictamente servidumbres sin duda ofrecían más analogías con éstas que con el usufructo, como servidumbre los consideró, sin darles un nombre especial y diferente. 4 Manresa, Código Civil, 571.

Comentando esa novedad introducida en el Derecho. Civil español, dice el comentarista últimamente citado:

"No hemos de extrañar, por lo tanto, que nuestro código, rompiendo con los precedentes de nuestra patria, haya abandonado por completo el profundo error de considerar el usufructo como una servidumbre personal. El usufructo es·servidumbre sólo en un sentido: como gravamen en cosa ajena, ni más ni menos que el censo y la hipoteca." Tomo citado, pág. 351.

En la misma opinión abunda el comentarista Scaevola, tomo 9, pág. 83, y tomo 10, págs. 136–137.

En armonía con la citada base 12, el Código Civil español, bajo el epígrafe "De las diferentes clases de servidumbre que pueden establecerse sobre las fincas," prescribió en sus artículos 530 y 531:

"Art. 530: La servidumbre es un gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño.

"El inmueble a cuyo favor está constituída la servidumbre, se llama predio dominante; el que la sufre, predio sirviente.

"Art. 531: También pueden establecerse servidumbres en provecho de una o más personas, o de una comunidad, a quienes no pertenezca la finca gravada."

Tal era la ley en esta Isla desde que por Real Decreto de 31 de julio de 1889, con ligeras variantes, se hizo extensivo a Puerto Rico el Código Civil vigente en la Península, continuando éste en vigor hasta que en 1902 lo derogó nuestra legislatura al aprobar el Código Civil Revisado, restableciendo en dicho nuevo código la legislación anterior al Código Civil español referente a servidumbres personales, con arreglo a la cual el usufructo, el uso y la habitación se consideraban como tales. A ese fin se adicionó el artículo 538 (467, ed. 1930), inmediatamente después de los artículos 536 y 537 del Código Civil Revisado (465 y 466, ed. 1930), idénticos a los 530 y 531 del español, prescribiendo el citado artículo 538. lo siguiente:

"Art. 538. (467, ed. 1930) Todas las servidumbres que afectan a las tierras pueden ser divididas en dos clases: personales y reales.

"Las servidumbres personales son aquéllas inseparablemente unidas a la persona para cuyo beneficio han sido establecidas y que terminan con su vida. *Estas servidumbres son de tres clases: usufructo, uso y habitación.*

"Servidumbres reales, que son también llamadas servidumbres prediales, son aquéllas que disfruta el propietario de una finca, constituídas sobre otra propiedad vecina para beneficio de aquélla.

"Se llaman servidumbres prediales, porque estableciéndose para beneficio de una propiedad; las obligaciones que la constituyen se prestan respecto de dicha propiedad y no respecto de la persona que sea su dueño." (Bastardillas nuestras.)

Taxativamente expresa el artículo 467 antes transcrito que las servidumbres personales son de tres clases: usufructo, uso y habitación. Ante tan terminante precepto legal, no cabe otra interpretación que no sea la de' que en esta Isla, desde el primero de julio de 1902 en que empezó a regir el Código Civil Revisado, no puede considerarse como servidumbre personal la que no sea una de las tres antes mencionadas. *Expressio unius est exclusio alterius.*

Así lo insinuó este tribunal por primera vez en el caso de *López* v. *Registrador,* 44 D.P.R. 897. En dicho caso, Julio P. Castro, dueño de una finca de cuarenta cuerdas de terreno, segregó de ella y vendió en el año 1893 a Zenón Montalvo Avilés, una parcela de trece cuerdas. Al inscribirse la finca a favor de Montalvo, se consignó lo siguiente:

"Habiéndose convenido que el Sr. Castro podrá seguir utilizando y sirviéndose del camino que da paso por dentro del mismo terreno que se vende al Sr. Montalvo, quien consiente y reconoce ese derecho o servidumbre al vendedor. En su virtud don Zenón Montalvo y Avilés inscribe su título de compra con la servidumbre de paso mencionada."

En 1924 Montalvo vendió dichas trece cuerdas a Enrique López Delgado, a cuyo nombre se inscribieron en el Registro. En noviembre de 1932, López Delgado solicitó por escrito del registrador que cancelase la mencionada servidumbre de paso, fundándose en que según los documentos que le presentaba, Julio P. Castro había renunciado a ella y en que dicho señor había fallecido. Los documentos presentados al registrador fueron uno privado firmado por Castro ante un notario en el que renunció expresamente a la servidumbre y un certificado del Registro Civil de Mayagüez acreditativo del fallecimiento de Castro. El registrador denegó la cancelación por estimar, entre otros motivos, que se trataba de una servidumbre real. Habiéndose recurrido de la nota del registrador, al revocarla se dijo por este tribunal:

"El Código vigente *cuando la servidumbre objeto de este recurso fué constituída,* disponía lo siguiente:

(Siguen los artículos 530 y 531 del Código Civil español ya transcritos.)

"Aunque se ha escrito mucho por los comentaristas del Código Civil español, del que procedía el código que aquí regía en 1893, con muy escasas modificaciones, y también por los de Códigos similares al español de otras naciones sobre si existen servidumbres personales y si las así llamadas son meros derechos o gravámenes sobre la finca de otra persona como ocurre con la hipoteca y si los derechos de usufructo, uso y habitación son o no servidumbres personales, enten-

demos que habiendo declarado el artículo 531 citado que pueden establecerse servidumbres en provecho de una o más personas o de una comunidad a quienes no pertenezca la finca gravada, hay que llegar forzosamente a la conclusión de que *cuando fué constituída la servidumbre en el presente caso podía el comprador Montalvo constituir servidumbre personal de paso a favor del vendedor Castro.* Sentado lo que precede, se hace necesario examinar lo que consta en el registro para concluir si se trata de una servidumbre real predial o si es personal.

"La constancia que de ella aparece del registro no demuestra una servidumbre de paso por el predio vendido de trece cuerdas a favor del resto de la finca de donde fueron segregadas ni a favor de ninguna otra. No se sabe por él que haya un predio dominante a favor del cual la servidumbre se haya constituído. Por el contrario, lo que de ella resulta es que el comprador consintió en que el Sr. Castro siguiera utilizando y sirviéndose del camino que atraviesa la finca de trece cuerdas y que el comprador consintió y reconoció ese derecho o servidumbre al vendedor. Si a lo dicho agregamos que cuando se trata de determinar si una servidumbre es predial o personal debe tenerse presente en la interpretación de la cláusula que la contiene que la ley favorece la libertad de las tierras y también que cuando se vende alguna finca reservándose el vendedor derecho en ella cualquier duda en cuanto a tal reserva debe resolverse en contra de tal limitación de dominio, tenemos que llegar a la conclusión de que la servidumbre que aparece en el registro es personal y no real." (Bastardillas nuestras.)

No debe entenderse que no tiene reconocimiento legal en esta jurisdicción cualquier otro pacto como el que se interpretó en *López* v. *Registrador,* supra, que con arreglo al Código Civil español debe considerarse como servidumbre personal. Tales pactos no podrán calificarse de servidumbres por impedirlo el artículo 467 de nuestro Código Civil; pero si bien no son constitutivos de servidumbres personales, son los que denominan los tratadistas "derechos de crédito u obligaciones personales." 10 Scaevola, Código Civil, 135.

Arguye el apelado que el gravamen constituído sobre la finca de cuatrocientas cuerdas constituye un derecho de uso y por consiguiente es una servidumbre. La misma aseveración hizo la corte inferior al expresar en su opinión:

"Todos (los comentaristas) admiten que el derecho de paso puede establecerse en un predio a favor de una persona a título de uso, siendo entonces servidumbre personal." Con la mayor deferencia a la corte sentenciadora, permítasenos decir que los comentaristas no admiten tal cosa. Como dice Scaevola: "La servidumbre es un uso o la prohibición de un uso de la cosa." Ob. y T. cit., 110. Pero la palabra "uso" en esa oración tiene la acepción de *"goce"* o *"disfrute'*, y no se refiere en manera alguna al *derecho de uso*, que tiene una acepción bien definida en el Derecho. El artículo 451 del Código Civil lo define así:

"Art. 451. Uso es el derecho concedido a una persona para disfrutar *graciosamente* de una cosa perteneciente a otra, o para percibir una porción de los frutos que ella produzca, en cuanto fuere bastante para las necesidades del usuario y de su familia." (Bastardillas nuestras.)

Refiriéndose al derecho de uso, dice Scaevola:

"Sabido es que el derecho de uso es sólo un usufructo parcial, un usufructo de menor cuantía, limitado a la percepción de los frutos de una cosa, lo que baste a satisfacer las necesidades del usuario y de su familia." Ob. y T. cit., 138.

Si siguiésemos el criterio del apelado y de la corte inferior, como toda servidumbre es un uso o la prohibición de un uso de la cosa, como dice Scaevola, llegaríamos al absurdo de que cualquier servidumbre, sea cual fuere su naturaleza, siempre que se hubiese concedido graciosamente, podría considerarse como un *derecho de uso*, y por consiguiente sería una servidumbre personal. En otras palabras, desaparecerían del Derecho Civil en tales casos las servidumbres reales o prediales.

Sentados los anteriores principios y descartada la posibilidad de que la de este caso sea una servidumbre personal, ya que no se trata de un derecho de usufructo, uso o habitación, cabe ahora preguntar: ¿Se trata en este caso de una servidumbre real o por el contrario de una mera obligación

personal? A nuestro juicio bastará leer las cláusulas séptima y novena antes transcritas para concluir que el derecho de paso de ferrovía, si bien se concedió a la corporación Central Vannina, no lo fué como decía el Código de las Siete Partidas "para pro de su persona" y sí "ha pro señaladamente de su heredad." A este efecto dice Manresa:

"Las palabras 'en beneficio de otro inmueble' equivalen a 'en favor o en consideración a un inmueble,' lo que no excluye que en realidad el beneficio, la utilidad, recaiga en el propietario o poseedor de ese inmueble; pero recae en él por su cualidad de propietario, o lo que es lo mismo, disfruta de este derecho por consideración a la finca, por pertenecerle la misma." Ob. y T. cit., pág. 567.

Más adelante, a la página 572, repite el mismo autor:

"Si el provecho o beneficio de la servidumbre recae en una persona por su cualidad de propietario de determinada finca, la servidumbre es *real*; si recae en una persona independientemente de su cualidad de propietario y aun sin ser propietario de nada, la servidumbre es personal."

Si examinamos las cláusulas séptima y novena antes transcritas, se notará que el objeto de la servidumbre es permitir a la Central Vannina la construcción de una vía férrea permanente sobre la finca de 400 cuerdas para poder ella pasar sus trenes, que, como es de conocimiento general y además se estipuló por las partes, se usan para la carga de azúcar, cañas, abonos, etc., en relación con las operaciones de siembra y molienda de cañas de azúcar de la Central. Además, en la cláusula séptima se impuso como condición de la servidumbre construir en el predio sirviente "uno o dos desvíos de largo suficiente para dos o tres vagones para uso de sus propietarios o arrendatarios." Y de la estipulación de las partes que hemos resumido bajo la letra *b,* supra resulta la existencia de un predio de diez y ocho cuerdas y fracción, radicado en el barrio Monacillos, en Río Piedras, que, como dijéramos antes, al constituirse la servidumbre pertenecía a la Central Vannina y que juntamente con la facto-

ría que entonces como ahora existía sobre dicho fundo, fué vendida por la citada corporación a la demandada apelante Central San José, Inc., y que en dicho predio se hallaba la estación principal del ferrocarril de la factoría, ferrocarril que conduce las cañas desde las fincas de los colonos y de la propia central para ser convertidas en azúcar en la factoría. Claramente resulta del contexto de dichas cláusulas, así como de la estipulación de las partes, que la servidumbre se constituyó en beneficio o a favor de la Central como predio y no a favor de la Central Vannina como una corporación, independientemente de sus tierras.

El caso de *Monroig* v. *Registrador,* 19 D.P.R. 823, ilustra perfectamente los principios legales antes enunciados. En dicho caso se suscitó una cuestión análoga a la que nos ocupa. El 19 de agosto de 1911, los esposos Parker, dueños de una finca rústica radicada en Bayamón, constituyeron sobre ella a favor de Antonio Monroig Obrador, casado con doña Consuelo Falbe, sus herederos, sucesores o representantes y cesionarios, el derecho de servidumbre perpetua de paso de ferrovía, para utilizar la cual Monroig tendría el derecho de construir una vía férrea sobre determinada faja de terreno. Se convino además en la escritura de constitución de la servidumbre que Monroig utilizaría la vía con el fin de conducir caña de azúcar de su propiedad y la de sus colonos, a la Central Juanita, de Bayamón. Refiriéndose a la naturaleza de la servidumbre así constituída, se dijo entonces por este Tribunal:

"Pero aparte de todo esto, indudablemente se trata de una servidumbre predial, ya que en el título de constitución se consigna que será utilizada la servidumbre para llevar cañas a la Central Juanita; y del contexto del documento se llega a la conclusión de que la servidumbre se constituye en provecho de dicha Central, por cuya razón la servidumbre es real y no personal."

En el presente caso no existe problema de registro. La servidumbre se inscribió sobre el predio sirviente desde

el 23 de enero de 1912 y cuando posteriormente adquirió el demandante apelado el remanente de la misma, tuvo conocimiento por el registro, por lo menos, de la existencia de la servidumbre y compró, por consiguiente, sujeto a dicho gravamen. No pudiendo alegar el apelado la condición de tercero (*Colón* v. *Plazuela Sugar Co.,* 47 D.P.R. 871; *Méndez* v. *Eastern Sugar Associates,* 89 F. (2d) 399, 405), y siendo la servidumbre válida entre las partes que originalmente la pactaron, también lo es en cuanto al apelado, que no pudo adquirir sobre la finca más derechos que los que tenía su antecesor en título.

■ Arguye la corte sentenciadora que en el presente caso no existe predio dominante, y se pregunta: ''¿Dónde está el predio dominante en el caso que nos ocupa? No existe. Así lo admite la propia parte demandada.'' La corte inferior incurre en manifiesto error al asegurar que la parte demandada admite que no existe predio dominante. En ninguna parte del récord aparece tal admisión. Por el contrario, ambas partes estipularon la existencia de un predio de diez y ocho cuerdas y fracción, donde se levanta la factoría, y es la teoría de la demandada y así resulta del contexto de las cláusulas constitutivas de la servidumbre, que fué a favor de ese predio que se constituyó el gravamen. Es cierto que en la escritura no se describe el predio dominante, circunstancia ésta indispensable para la inscripción de la servidumbre de acuerdo con el artículo 13 de la Ley Hipotecaria; pero como no se trata en este caso de inscribir la servidumbre, puesto que ya lo está aunque sólo en relación con el predio sirviente, y no pudiendo ni pretendiendo alegar el demandante, repetimos, su condición de tercero, ese defecto no invalida la servidumbre en lo que a él respecta. *Colón* v. *Plazuela Sugar Co.,* y *Méndez* v. *Eastern Sugar Associates,* supra.

■ Sostiene también el apelado que tampoco existe predio sirviente, porque si bien se describe la finca de cuatro-

cientas cuerdas, no se describe la faja de terreno de dicho inmueble que ha de ser ocupada por las vías de la demandada apelante. Si bien es conveniente describir dicha faja de terreno para así limitar a ella la servidumbre, sin embargo la ley no lo exige. A este efecto dice Manresa:

"La especialidad de la servidumbre de paso presenta alguna dificultad en la aplicación del principio sentado. Pero esta misma servidumbre se ofrece bajo diferentes formas. Puede consistir en el derecho de atravesar indistintamente por una u otra parte de la heredad ajena, o en el derecho de pasar precisamente por un camino o vereda para el uso de la servidumbre." Ob. y T. cit., 596.

■ Por último, alega el demandante apelado que dicha servidumbre se constituyó gratuitamente y sin consideración alguna. Bastará leer las cláusulas séptima y novena anteriormente mencionadas, para inmediatamente advertir que en consideración a la constitución de la servidumbre la Central Vannina, causante de la demandada apelante, se obligó y dió cumplimiento a ciertas condiciones, tales como construir desvíos para uso de los propietarios o posteriores arrendatarios del predio sirviente y la obligación en que incurrió de aceptar y moler, previo contrato, las cañas que se cultivasen en el predio sirviente, bajo las mismas condiciones en que aceptase y moliese las del colono más favorecido.

Tratándose como se trata en este caso de una servidumbre predial, la disolución de la corporación a cuyo favor se constituyó originalmente no afecta la existencia del gravamen, y no habiéndose demostrado que dicha servidumbre haya quedado extinguida por alguna de las causas prescritas en el artículo 482 del Código Civil, edición 1930, *procede declarar con lugar el recurso, y en su consecuencia revocar la sentencia apelada y desestimar la demanda con costas al demandante, sin incluir honorarios de abogado por estimar que no ha habido temeridad por parte del demandante en la institución de este pleito.*