EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Aida Rivera Concepción<br>        Recurrida<br><br>                vs.<br><br>Administración de Reglamentos<br>y Permisos (A.R.P.E.)<br>        Agencia-Administrativa<br><br>Carlos Roque Adorno<br>        Concesionario del Permiso<br>      Peticionario | Certiorari<br><br>2000 TSPR 143 |

Número del Caso: CC-1999-0458

Fecha: 29/09/2000

Tribunal de Circuito de Apelaciones:

                Circuito Regional I

Juez Ponente:

                Hon. Angel González Román

Abogado de la Parte Peticionaria:

                Lcdo. José Raúl Ibarra Morales

Abogado de la Parte Recurrida:

                Lcda. Carmen J. Díaz Padró

Abogado de ARPE:

                Lcdo. Rafael Quiñones Ayala

Materia: Revisión de Decisión de Agencia Administrativa

        Este documento constituye un documento oficial del Tribunal Supremo que está
        sujeto a los cambios y correciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Aida Rivera Concepción
        Recurrida

            vs.

                            CC-1999-458      CERTIORARI

Administración de Reglamentos
y Permisos (A.R.P.E.)
        Agencia-administrativa

Carlos Roque Adorno
        Concesionario del permiso-
        peticionario


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico a 29 de septiembre de 2000


**En el caso de autos la Administración de Reglamentos y Permisos --en adelante, "A.R.P.E."-- concluyó que la clasificación "taller de reparación de acondicionadores de aire de automóviles" está comprendida dentro de la clasificación "taller de mecánica para autos". Razonando de ese modo, A.R.P.E. autorizó, <u>vía excepción</u>, al aquí peticionario Carlos Roque Adorno a utilizar un terreno localizado en un distrito zonificado R-1, para operar un taller de reparación de acondicionadores de aire de automóviles.**

**Inconforme, una vecina de dicha propiedad inmueble, Aida Rivera Concepción, apeló ante la**

**Junta de Apelaciones sobre Construcciones y Lotificaciones --en adelante, J.A.C.L.-- alegando que erró A.R.P.E. al armonizar ambos conceptos y proponiendo, a su vez, que se catalogara dicho taller como "de refrigeración"; conforme su argumento, A.R.P.E. concedió el permiso de uso en contra de la ley, pues alegadamente venía obligada a procesar la petición de permiso de uso mediante el mecanismo de la "variación".**

La J.A.C.L. confirmó la determinación de A.R.P.E., por lo que la aquí recurrida Rivera Concepción solicitó la revisión de dicha determinación ante el Tribunal de Circuito de Apelaciones. El foro apelativo intermedio revocó las decisiones de las antes mencionadas agencias administrativas, al concluir que el taller de reparación de acondicionadores de aire de automóviles no puede ser catalogado como un "taller de mecánica para autos" y que, en cambio, es una categoría subsumible dentro del concepto "taller de refrigeración". Este razonamiento, forzosamente, llevó al tribunal apelativo a determinar que el permiso de uso fue expedido en contra de lo preceptuado por la ley, pues según su razonamiento, en un distrito zonificado R-1, la solicitud de un permiso de uso para operar un taller de refrigeración tendría que evaluarse bajo el procedimiento de variación, contrario al proceder de A.R.P.E. que no observó ese proceso en virtud de su aplicación de las diferentes clasificaciones que hemos observado.

Inconforme con el dictamen del tribunal apelativo intermedio, Carlos Roque Adorno acudió ante este Tribunal en revisión, vía certiorari, de la sentencia emitida por dicho foro judicial, imputándole a éste haber errado:

> "...al concluir que el permiso otorgado por la ARPE y confirmado por la JACL debió haberse otorgado mediante mecanismo de variación y no mediante el mecanismo de excepción como fue otorgado."

Expedimos el auto. Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

## I

Según la Ley de Procedimiento Administrativo Uniforme --en adelante, "la L.P.A.U."-- las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia

sustancial que obra en el expediente administrativo, mientras que las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.[1]

Ahora bien, no siempre es tajante o exclusiva la clasificación de una controversia como una "de hecho" o de "derecho". En ocasiones, como en la que nos ocupa[2], nos enfrentamos a cuestionamientos "mixtos de hecho y de derecho". Entonces, se plantea la interrogante sobre cuál es el alcance de la revisión judicial en esos casos a la luz de lo dispuesto en la L.P.A.U. La norma establecida ha sido considerar dichas cuestiones como unas de derecho. Por lo tanto, tal como ha dicho el profesor Fernández, "[p]ara que la concepción interpretativa de la agencia pueda prevalecer y recibir un trato deferencial es imprescindible que se reúnan los requisitos de consistencia y razonabilidad con el propósito legislativo." Fernández, Demetrio, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Sec. 9.4.[3]

Por otro lado, reiteradamente, "hemos sostenido que las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto y que su revisión judicial se limita a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción". Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692, 699 (1975). "Debe[mos] ser cautelosos al intervenir con dichas determinaciones." Viajes Gallardo v. Homero Clavell, 131 D.P.R. 275 (1992). Sin embargo, esa deferencia no significa que hayamos renunciado nuestra función revisora en instancias apropiadas y meritorias, pues en "el supuesto de que la agencia administrativa hubiese cometido algún error en la aplicación de la ley,

---

[1] 3 L.P.R.A. Sec. 2175.

[2] Hemos de resolver si, como cuestión de hecho y de derecho, el concepto "taller de reparación de acondicionadores de aire de automóviles" puede ser subsumido razonablemente en el concepto "taller de mecánica para autos", según contenido en el Reglamento de Zonificación, Reglamento Núm. 4 de A.R.P.E.

[3] Ante. Véase, además, Colón v. Méndez, Depto. Recursos Naturales, 130 D.P.R. 433 (1992).

esa actuación no sería válida." Del Rey v. J.A.C.L., 107 D.P.R. 348, 355 (1978). Fuertes v. ARPE, 134 DPR 947 (1993).

Debe mantenerse presente que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarlas. Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 210 (1987). Los tribunales no deberán alterar las conclusiones de hechos de un organismo o agencia, como la A.R.P.E. o la J.A.C.L., si éstas se fundamentan en suficiente evidencia que surja del récord administrativo considerado en su totalidad. Henríquez v. Consejo Educación Superior, supra. A tal efecto aplica aquí lo que expresamos en J.R.T. v. Escuela Coop. E. M. De Hostos, 107 D.P.R. 151, 156-157 (1978):

> "Nuestra función es tomar el récord en su totalidad y poner en vigor la orden si encontramos evidencia sustancial para sostener las conclusiones de la Junta."

En fin, reiteradamente hemos resuelto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Ello es así porque éstos cuentan con experiencias y conocimientos altamente especializados sobre los asuntos que se le encomiendan. Román v. Superintendente de la Policía, 93 D.P.R. 685, 690 (1966); Rubín Ramírez v. Trías Monge, 111 D.P.R. 481, 484-485 (1981). Es por ello que cuando se impugnan sus decisiones los tribunales deben limitarse a indagar sobre la razonabilidad de las mismas y no deben sustituirlas por su propio criterio, M & V Orthodontics v. Negdo. Seg. Empleo, 115 D.P.R. 183, 188-189 (1984), "a menos que se infrinja[n] directamente valores constituciones fundamentales, [o] cuando las actuaciones de estos organismos sean claramente arbitrarias". Henríquez Soto v. Consejo Educación Superior, ante, a la pág. 212. Facultad para las Ciencias Sociales v. C.E.S., 133 D.P.R. 521 (1993).

Ante cuestionamientos mixtos de hecho y de derecho el tribunal, con el amplio poder de revisión que le concede la L.P.A.U. y la jurisprudencia aplicable, está llamado a determinar si la determinación administrativa

es una razonable y consistente con el propósito legislativo. El criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable.

En el caso que ocupa nuestra atención en el día de hoy, la interpretación administrativa cuestionada fue desechada por el tribunal apelativo intermedio por alegadamente ser la misma una "decisión arbitraria y caprichosa" expresándose que "[...]independientemente de que A.R.P.E. catalogue el taller del Sr. Roque como un taller de reparación, lo cierto es que el mismo es un taller de refrigeración." Es de notarse que el tribunal apelativo <u>no</u> explicó <u>ni</u> expuso las razones por las cuales consideró como "arbitraria y caprichosa" la determinación administrativa; tampoco abordó el asunto del porqué la misma es irrazonable.

## II

El terreno o propiedad inmueble sobre el cual gira la controversia está clasificado como demarcado dentro de un distrito R-1 según la Sec. 11.00 del Reglamento de Zonificación. En ese mismo Reglamento se dispone que:

> "En los distritos R-1 se usarán los edificios o pertenencias
> para los fines expuestos a continuación:
> 1. Casas de una familia
> 2. Casas en hilera y casas patio de acuerdo con lo establecido
> en las Secciones 74.00 y 75.00 de este Reglamento.
> **3. Otros usos de acuerdo con lo establecido en la Sección 99.00
> de este Reglamento."**

De ese modo, se deja la puerta abierta para que, <u>por medio del mecanismo de excepción</u>, se permita el uso de dichas ubicaciones. Por su parte, el mencionado Reglamento define el concepto "excepción" como una "autorización para utilizar una propiedad para un uso que este Reglamento admite y tolera en una zona o distrito siempre que se cumpla con los requisitos o condiciones establecidas en el Reglamento para la autorización del uso de que se trate." Para la concesión de una excepción, bajo la subsección 99.02, por parte de A.R.P.E., la misma deberá cumplir con ciertos

criterios que se establecen en la Subsección 99.03 del Reglamento de
Zonificación, en la cual se expresa lo siguiente:

> "La determinación que se tome sobre un uso propuesto bajo
> las disposiciones de esta Sección descansará en la evaluación
> de la combinación de factores que presente y demuestre la parte
> interesada en cada caso. Para que haya una determinación
> favorable, la parte interesada debe demostrar que tiene la
> capacidad de operar el uso juiciosamente y que la operación
> del uso resulta conveniente al interés público, a base, sin
> limitarse a éstos, de los siguientes criterios:
> 1. Se proteja la salud, seguridad y bienestar de los
> ocupantes de la propiedad objeto de la solicitud así como de
> propiedades limítrofes.
> 2. No se menoscabe el suministro de luz y aire a la
> edificación a usarse u ocuparse, o a las propiedades
> limítrofes.
> 3. No se aumente el peligro de fuego.
> 4. No se ocasione reducción o perjuicio a los valores
> de las propiedades establecidas en áreas vecinas.
> 5. Se demuestre la viabilidad, adecuacidad y
> conveniencia del uso solicitado.
> **6. Se cumpla con las condiciones establecidas en este
> Reglamento o que puedan establecerse para el caso particular."**

**Por otro lado, en la Sección 99.05,18(ak) del Reglamento de
Zonificación se enumeran entre los usos a considerarse por A.R.P.E. en
un distrito R-1:**

> **"99.05--Usos a Considerarse por ARPE--Los siguientes usos
> podrán considerarse en los distritos correspondientes por
> ARPE:
> [...]
> 18. Usos comerciales, institucionales y de servicios en
> terrenos hasta un máximo de una (1) cuerda, en Distritos R-0,
> R-1, RT-0, RT-00, RT-1, R-4, M, P, A-4 y DS en áreas no
> urbanizadas conforme al Reglamento de Lotificación
> (Reglamento de Planificación Núm. 3) o en áreas con
> características y comportamiento de tipo rural, excepto cuando
> se indique lo contrario más adelante.
> [...]
> [...] ak. Talleres de hojalatería y pintura, mecánica,
> electromecánica, rejas, soldaduras o vitrales, Taller de
> reparación de bicicletas y enseres eléctricos de uso corriente
> en el hogar, siempre y cuando no se exhiban fuera del local.
> am. Tapicería excepto en Distritos R-4 an. Venta de efectos
> deportivos ao. Venta de losas, cerámica, azulejos y equipo de
> baño ap. Venta de mascotas y accesorios ("Pet Shop") aq. Venta
> de muebles, enseres y artículos del hogar. ar. Venta y alquiler
> de vehículos de motor excepto en Distritos R-4. as. Venta de
> piezas de automóviles, motoras o bicicletas, siempre que las
> piezas no se exhiban fuera del local. at. Venta de plantas
> ornamentales o productos agrícolas. au. Venta de productos
> alimentarios o naturales ("health food"). av. Venta de
> revistas, periódicos o efectos escolares. aw. Venta,
> reparación e instalación de gomas (gomera) excepto en
> Distritos R-4."**

Queda claro que el Reglamento de Zonificación se ocupa de las categorías "taller de mecánica" y "taller de refrigeración"[4], sin definirlas. Por otro lado, es discutible el punto sobre a qué oficio corresponde, propiamente, la tarea de reparar acondicionadores de aire de automóviles. Por ejemplo, la ley que crea la Junta Examinadora y Colegio de Técnicos de Refrigeración y Aire Acondicionado, Ley Núm. 36 de 20 de mayo de 1970, según enmendada, define el término "Técnico de Refrigeración y Aire Acondicionado"[5] como aquella persona dedicada a la instalación, reparación o mantenimiento de equipos de refrigeración y de aire acondicionado, o de artículos o equipos relacionados, en los hogares, establecimientos comerciales, en las industrias, en hoteles, oficinas, vehículos de motor, áreas de establecimientos de espectáculos y de recreación y en sitios o establecimientos análogos a éstos.

Sin embargo, la ley que crea la Junta Examinadora de Técnicos Automotrices definía, al tiempo de expedirse el permiso de uso que nos ocupa, el término "Técnico automotriz" como toda persona que tenga pleno conocimiento, comprensión y dominio de la técnica manual y de los procesos envueltos para el diagnóstico, reparación y ajuste de motor, transición y otras partes esenciales para el funcionamiento de un vehículo de motor, incluyendo el sistema eléctrico, electrónico o de aire acondicionado del mismo, para los cuales se requieren destrezas especiales.

Indudablemente, A.R.P.E no se enfrentó a un caso en que hubiesen líneas tajantes que deslindaran claramente lo relativo a permisos de uso

---

[4] Un análisis del Reglamento de Zonificación lleva a la conclusión de que los talleres de refrigeración sólo son permitidos en áreas industriales, específicamente en distritos I-1 e IL-1, y nunca por vía de excepción en distritos R-1. Debemos anotar aquí, como dato ilustrativo, que según el Reglamento para la certificación, venta y fijación de un sello para regular el programa de educación continuada del Colegio de Técnicos de Refrigeración y Aire Acondicionado de Puerto Rico, sólo las unidades de refrigeración o aire acondicionado que excedan de cinco toneladas o cinco caballos de fuerza se consideran equipo y servicio industrial. De ahí que una unidad de acondicionamiento de aire de automóvil no podría considerarse como un sistema industrial para fines de dicha reglamentación.

para talleres de mecánica por un lado, y, por otro lado, talleres de reparación de acondicionadores de aire automotrices. Luego de analizar la solicitud de permiso de uso que nos ocupa, y de celebrar una vista administrativa con desfile de prueba, A.R.P.E. expidió un informe en el que decidió autorizar:

> "[...] el permiso de uso para operar un Taller de Reparaciones de Aires Acondicionado [...] a tenor con las disposiciones del Tópico 13, Sección 99.05, Inciso 18(ak) del Reglamento de Planificación Núm. 4 (Reglamento de Zonificación) vigente. Se toma en consideración las características del sector, que el sector es uno no urbanizado, que no se menoscaba el suministro de luz y aire a la edificación ni a las propiedades limítrofes, se protege la salud, seguridad y bienestar de los ocupantes de la propiedad y de propiedades limítrofes y no se aumenta el peligro de fuego. Se dispone que se cumplirá en todo momento con las disposiciones de la Ley Sobre Política Pública Ambiental."

Estas conclusiones, a su vez, están basadas en las determinaciones de hechos de la agencia, según las cuales:

> "De la prueba desfilada y del expediente quedó probado que la propiedad objeto de la solicitud de permiso de uso es propiedad del Sr. Carlos Roque Adorno.
> Dicho predio ubica en un distrito residencial R-1, colindando por el lateral izquierdo con una ferretería liviana, por el lateral derecho con una residencia, hacia el posterior con una residencia y hacia el patio delantero con la PR-844 y la propiedad de la opositora.
> El uso se opera en el patio lateral izquierdo de la estructura que compone la residencia habitual del peticionario, lo cual es en hormigón y bloques de dos niveles.
> La prueba presentada demostró que aunque el predio está zonificado R-1 en el área objeto del permiso de uso el comportamiento del sector es uno mixto, esto es, que existen usos comerciales y residenciales compartiendo juntos. Los usos existentes todos tienen permiso de uso expedido por la administración de Reglamentos y Permisos vía excepción.
> El área objeto de la solicitud no constituye un proyecto de urbanización desarrollado conforme al Reglamento de Planificación Número 3, Reglamento de Lotificación y Urbanización.
> La carretera que sirve de acceso al uso propuesto, así como las propiedades limítrofes es una vía de dos carriles con un ancho de rodaje de aproximadamente 6.00 metros.
> El peticionario cuenta con el endoso de las agencias concernidas, en especial la Junta de Calidad Ambiental. Utiliza maquinaria especializada para reciclar el clorofluoruro carbono (CFC's) también evaluada por la Junta de Calidad Ambiental.
> El uso ha operado por espacio de tres (3) años en el predio. Tanto los usos comerciales que operan colindando con la solicitud como los usos en las inmediaciones cuentan con permisos de usos autorizados por la Administración de Reglamentos y Permisos, vía excepción, por no constituir el área un proyecto de urbanización."

---

[5] 20 L.P.R.A. 2081.

Es evidente que el proceder de las agencias administrativas impugnadas se llevó a cabo conforme a los procesos ordenados por las leyes aplicables. Al conceder el permiso de uso solicitado, A.R.P.E. tomó en consideración y evaluó, entre otras cosas, los requisitos y características del distrito donde ubicaría el taller; los usos actuales y la intensidad de las actividades comerciales del sector; y el impacto en la seguridad, el bienestar y la salud en el área. Por otro lado, como cuestión de derecho, hemos de reconocer que las determinaciones de A.R.P.E. y de la J.A.C.L., de considerar un taller de reparación de acondicionadores de aire automotrices de forma análoga a un taller de mecánica automotriz, son determinaciones razonables que no pueden ser tachadas como contrarias al mandato legislativo.

Erró el Tribunal de Circuito de Apelaciones al revocar las decisiones administrativas revisadas sustituyendo, <u>sin fundamentar su conclusión</u>, el criterio de la agencia por el suyo. Nada en el expediente administrativo demuestra que las determinaciones impugnadas sean irrazonables o arbitrarias. La determinación administrativa, tomada en el presente caso, en interpretación de las leyes que inciden en su funcionamiento y de los reglamentos aplicables, merece deferencia judicial en vista de su razonabilidad.

Por los fundamentos antes expuestos se revoca la sentencia del Tribunal de Circuito de Apelaciones de la cual se recurre.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LOPEZ
Juez Asociado
EN EL TRIBUNAL SUPREMO DE PUERTO RICO



Aida Rivera Concepción
**Recurrida**

**vs.**

CC-1999-458    CERTIORARI
Administración de Reglamentos
y Permisos (A.R.P.E.)
Agencia Administrativa

Carlos Roque Adorno
Concesionario del permiso-
peticionario

SENTENCIA

**San Juan, Puerto Rico, a 29 de septiembre de 2000**

**Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones en el presente caso.**

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió Opinión disidente a la cual se unieron la Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Fuster Berlingeri.

Isabel
Llompart Zeno
**Secretaria del Tribunal Supremo**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Aida Rivera Concepción

    Demandante-Recurrida

    v.

                           CC-1999-458

      Certiorari

A.R.P.E.

    Demandada-Recurrente

Carlos Roque Adorno

    Concesionario del Permiso

Opinión Disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se unió la Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Fuster Berlingeri

San Juan, Puerto Rico, a 29 de septiembre de 2000.

> **La proliferación desmedida de negocios e industrias en distritos ostensiblemente residenciales ha tenido un alcance social, ambiental e infraestructural considerable. Para salvaguardar la calidad de vida de los vecinos de estos distritos se hace imperativo, hoy más que nunca, una estricta interpretación de las leyes y reglamentos de zonificación por las agencias a cargo de la planificación en Puerto Rico.**

La Opinión del Tribunal, al avalar la acción <u>ultra vires</u> de la Administración de Reglamentos y Permisos, socava los principios que sostienen el esquema de zonificación. A tenor con                                                                                el

Reglamento de Zonificación y un largo historial jurisprudencial nuestro, fue ilegal, irrazonable e impropia la concesión por A.R.P.E. de un permiso de uso a un taller de reparación de acondicionadores de aire de automóviles en un distrito clasificado R-1. El Tribunal, al confirmar esta acción, desatiende las reglas de hermenéutica y el lenguaje del Reglamento de Zonificación y concede un grado de discreción indebido a las agencias administrativas para alterar sus propios reglamentos.

**No podemos suscribir la Opinión, por ser erradas sus premisas y metodología y agraviosas sus consecuencias prácticas. La acción de A.R.P.E. que ha sido avalada por este Tribunal tiene el efecto de deprimir un sector residencial y alterar la zonificación del lugar. Como acertadamente ha expresado el periódico El Nuevo Día en su Editorial del 19 de septiembre de 2000, "[s]i todos los ciudadanos que desearen montar un comercio lo hicieran sin tomar en cuenta la reglamentación que rige la zona, Puerto Rico se convertiría en tierra de nadie, en un país sin planificación, donde imperaría la ley del más atrevido." Respetuosamente, disentimos.**

**I**

**La Administración de Reglamentos y Permisos (en adelante A.R.P.E.) autorizó, por vía de excepción, el establecimiento de un taller de reparación de acondicionadores de aire de automóviles en un distrito zonificado R-1. La agencia entendió que dicha empresa caía dentro del concepto de "taller de reparación de automóviles", que puede permitirse por excepción en un distrito R-1, y no en el de "taller de refrigeración". Este último no puede autorizarse salvo por variación a la zonificación existente, que exige un procedimiento mucho más estricto que la excepción.**

**La recurrida, Aida Rivera Concepción, cuya casa ubica frente al taller propuesto, apeló la concesión del permiso ante la Junta de Apelaciones sobre Construcciones y Lotificaciones (en adelante J.A.C.L.), donde alegó que A.R.P.E. erró al permitir la operación del referido taller. Refutó la conclusión de que el taller era uno de reparación de automóviles, y no de refrigeración. Sostuvo que A.R.P.E. concedió el permiso de uso ilegalmente, pues, al no poder hacerlo mediante excepción, venía obligada a procesar la solicitud como una variación a la zonificación del área. Alegó, además, que el impacto ambiental, económico y de tránsito del establecimiento en la comunidad residencial hacían impropia la concesión del permiso.**

**J.A.C.L. confirmó la determinación de A.R.P.E. Concluyó que el taller de reparación de acondicionadores de aire "se puede entender […] como un taller de mecánica o electromecánica para autos" y, además, que los problemas de tránsito y ruido de la zona preexistían la operación del taller. No abordó, sin embargo, las inquietudes de la recurrida sobre "la soldadura, […] olores, alarmas e hidrocarburos" y demás riesgos presentes en el establecimiento.**

**La recurrida solicitó la revisión de dicha determinación al Tribunal de Circuito de Apelaciones. El foro apelativo revocó a J.A.C.L., al concluir enfáticamente que un taller de reparación de acondicionadores de aire de automóviles no podía catalogarse como un taller de reparación de automóviles, sino como un taller de refrigeración. Determinó que los usos permitidos mediante excepción por la sección 99.05 del Reglamento de Zonificación Núm. 4 son númerus clausus, por lo que A.R.P.E. actuó ultra vires, excediendo su autoridad y discreción al otorgar un permiso para un uso no autorizado en un distrito R-1. Dicho permiso, concluye el foro apelativo, requería la aplicación del procedimiento de variación.**

**Inconforme con el dictamen apelativo, el concesionario, Carlos Roque Adorno, recurrió ante este Tribunal alegando error del foro intermedio al revocar la determinación de A.R.P.E. y de J.A.C.L. En su argumento principal reiteró la clasificación del taller de reparación de acondicionadores de aire que hiciera A.R.P.E. y sugirió una interpretación liberal del Reglamento de Zonificación en lo referente a la concesión de excepciones. La mayoría de este Tribunal acoge su argumento. Por las razones que elaboramos a continuación, no podemos avalar su decisión.**

II

La reglamentación relativa al uso y desarrollo de edificios, solares y terrenos tanto en áreas urbanas como rurales de Puerto Rico es dirigida por la Junta de Planificación, organismo creado hace un cuarto de siglo "con el propósito general de guiar el desarrollo integral de Puerto Rico de modo coordinado, adecuado [y] económico". Ley Núm. 75 de 24 de junio de 1975, Art. 4, 23 L.P.R.A. §62c. E.L.A. v. Domínguez, 104 D.P.R. 468 (1975). Es deber de la Junta de Planificación la adopción de la reglamentación necesaria para la consecución de este fin, inclusive el Reglamento de Zonificación.

A estos efectos, la Junta de Planificación aprobó el actual Reglamento de Zonificación como una revisión cabal de las directrices anteriores. El incremento en usos comerciales e industriales en comunidades residenciales fue uno de los principales motivos de la revisión.

> "[L]a transformación experimentada en el ámbito urbano principalmente en las áreas residenciales afectadas por el establecimiento de usos comerciales e industriales cuya operación resulta perjudicial al vecindario, requirió la creación de nuevos distritos comerciales de baja intensidad que servirán como áreas de transición entre las áreas residenciales y otros distritos comerciales. Se actualizan, además, los usos permitidos en los distritos comerciales e industriales vigentes para atemperarlos a los cambios surgidos en la tecnología y en los servicios que se ofrecen." Reglamento de Zonificación, Introducción, 23 R.P.R. §650.1640.

El Reglamento establece distintas clasificaciones para distritos residenciales, comerciales e industriales, de acuerdo a la densidad poblacional del área y su valor histórico, ambiental o turístico. El distrito Residencial-1 (R-1) "se establece para clasificar terrenos para facilitar, según se justifique, las necesidades del crecimiento urbano; **y para preservar el carácter residencial de áreas desarrolladas o que puedan desarrollarse en solares de novecientos (900) metros cuadrados o más**". Reglamento de Zonificación, §11.01, 23 R.P.R. §650.1657(1) (énfasis suplido). Éste es un distrito de baja densidad poblacional en el que se permiten sólo casas de una familia, casas en hilera, casas-patio y aquellos otros usos que el Reglamento autorizare. Reglamento de Zonificación, §11.02, 23 R.P.R. §650.1657(2).

Además de los usos directamente conducentes al propósito del distrito, pueden permitirse otros tipos de establecimiento por vía de excepción o variación. El mecanismo de excepción permite el uso de una propiedad para prácticas que, aunque no están directamente vinculadas al propósito de un distrito particular, son compatibles con el carácter de la zona. El Reglamento de Zonificación enumera de antemano los usos que pueden autorizarse en cada distrito.

La concesión de un permiso de uso por excepción es discrecional de la agencia, pero requiere "la evaluación de la combinación de factores que presente y demuestre la parte interesada en cada caso". Reglamento de Zonificación, §99.01, 23 R.P.R. §650.1746(2). En la determinación final, "tiene primacía en la concesión el interés público y el interés del vecindario en particular sobre el interés del dueño del terreno." Quevedo Segarra v. J.A.C.L., 102 D.P.R. 87, 94 (1974).

Nuestra jurisprudencia ha reiterado en numerosas ocasiones que los usos autorizados mediante excepción son **taxativos.** Las excepciones "[s]e conceden únicamente en los casos expresamente autorizados por el Reglamento y siempre sujeto a las condiciones en él prescritas." Quevedo Segarra v. J.A.C.L., supra; E.L.A. v. Domínguez, 104 D.P.R. 468, 471 (1975); Asoc. C. D. v. J.A.C.L., 116 D.P.R. 326, 332 (1985); A.R.P.E. v. J.A.C.L., 124 D.P.R. 858, 863 (1989). Esta interpretación emana del principio "expressio unius est exclusio alterius", que dispone que, cuando una ley o reglamento enumera una serie de requisitos,

situaciones, personas o prohibiciones específicas, "la mención específica de una persona o cosa implica la exclusión de otras personas o cosas. Esto es así, ya sea la mención en forma afirmativa o negativa." R.E. Bernier, J.A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, pág. 345 (1987). Dicha norma ha sido aplicada reiteradamente en nuestra jurisprudencia. Rodríguez Pérez v. Colón, 34 D.P.R. 78 (1925); Salgado v. Com. Hípica Insular, 49 D.P.R. 464 (1935); Belaval v. Fernós, 50 D.P.R. 820 (1936); Guzmán Rodríguez v. Central San José, 60 D.P.R. 386 (1942); López Maldonado v. Gobernador, 81 D.P.R. 337 (1959).

En el inciso que nos ocupa, §99.05, 23 R.P.R. §650.1746(4), es evidente que el listado de usos permitidos mediante excepción es númerus clausus. La norma de "expressio unius est exclusio alterius" aplica plenamente a este inciso y proscribe la inclusión de otros usos, sea por analogía o por fíat administrativo. La discreción de A.R.P.E. al conceder un permiso se extiende a determinar su conveniencia para el sector específico en que habrá de ubicarse, nunca a la consideración de usos no enumerados.

Dicha regla de hermenéutica también es directamente aplicable al inciso 99.05(r)(37). **Por ende, donde lee "[t]aller de hojalatería y pintura, mecánica, electromecánica, rejas, soldaduras o vitrales", no cabe incluir otros tipos de taller, por más que A.R.P.E. o J.A.C.L. los consideren semejantes a los mencionados.** El Reglamento es sumamente específico en los usos que considera aplicables y las agencias encargadas de implementarlo están obligadas estrictamente por lo que allí se establece. Com. de Vecinos v. Jta. de Planificación, supra; García Cabán v. U.P.R., 120 D.P.R. 167, 175 (1987); García Troncoso v. Adm. del Der. al Trab., 108 D.P.R. 53, 56-57 (1978).


III

Si la aplicación del referido principio de hermenéutica avala nuestra posición, un análisis de las leyes y reglamentos relacionados a las industrias de refrigeración y de mecánica automotriz confirman la misma. Veamos.

Dos instituciones reglamentan la profesión de las personas dedicadas a la industria de refrigeración: la Junta Examinadora de Técnicos de Refrigeración y Aire Acondicionado, 20 L.P.R.A. §2051 a la 2065, y el Colegio de Técnicos de Refrigeración y Aire Acondicionado. 20 L.P.R.A. §2066 a la 2081. La profesión de mecánico automotriz la rige la Junta Examinadora de Técnicos y Mecánicos Automotrices, 20 L.P.R.A. §2131 a la 2144c, y el Colegio de Técnicos y Mecánicos Automotrices, 20 L.P.R.A. §2145 a la 2145m.

Como bien indica la Opinión del Tribunal, tanto la normativa que reglamenta la mecánica automotriz como la que regula la industria de refrigeración pretende abarcar la reparación de acondicionadores de aires de automóviles. Las leyes que crean la Junta y

el Colegio de Técnicos de Refrigeración y Aire Acondicionado definen un técnico de refrigeración como,

> "aquella persona dedicada a la instalación, reparación o mantenimiento de equipos de refrigeración y de aire acondicionado, o de artículos o equipos relacionados, en los hogares, establecimientos comerciales, en las industrias, en hoteles, oficinas, **vehículos de motor**, áreas de establecimientos de espectáculos y de recreación y en sitios o establecimientos análogos a éstos."
> 20 L.P.R.A. § 2081(b) (Énfasis suplido)

El Reglamento de la Junta Examinadora de Técnicos de Refrigeración y Aire Acondicionado hace eco de esta definición en su segundo artículo. Reglamento Núm. 4448 de 21 de mayo de 1991.

La ley orgánica de la Junta Examinadora de Técnicos Automotrices, a su vez, indica que "técnico automotriz", [s]ignificará toda persona que tenga pleno conocimiento, comprensión y dominio de la técnica manual y de los procesos envueltos para el diagnóstico, reparación y ajuste del motor, transmisión y otras partes esenciales para el funcionamiento de un vehículo de motor; **incluyendo el sistema eléctrico, electrónico o de aire acondicionado del mismo, para los cuales se requieren destrezas especiales.**" 20 L.P.R.A. § 2131(a) (Énfasis suplido)

> **Al momento de su aprobación, ninguna de estas leyes contenía disposición alguna aplicable a la reparación de aires acondicionados de automóviles. Las condiciones tecnológicas de ese momento histórico no hacían necesaria esa consideración. Posteriormente, al proliferarse los sistemas refrigerantes en vehículos de motor, la legislatura aprobó sendas enmiendas incluyendo a los reparadores de acondicionadores de aire de automóviles, primero, entre los técnicos de refrigeración y, poco después, entre los técnicos automotrices.**

Las reglas de hermenéutica presumen que el legislador— y, por extensión, las agencias administrativas— toman en consideración la totalidad del <u>corpus</u> jurídico al aprobar una nueva norma. Toda inconsistencia aparente debe resolverse para preservar la armonía del todo. Las leyes "<u>in pari materia</u>" deben interpretarse conjuntamente y el significado de palabras dudosas debe buscarse en "otras palabras y sentencias que les estén relacionadas", Art. 17 Cód. Civil, y en "[l]as leyes que se refieren a la misma materia o cuyo objeto sea el mismo", Art. 18 Cód. Civil. R.E. Bernier, J.A. Cuevas Segarra, <u>supra</u>, págs. 483-84.

Tomando esto en cuenta, concluimos que, al incluir a los técnicos de reparación de acondicionadores de aire de automóviles tanto en la industria de refrigeración como en la de mecánica automotriz, el legislador pretendió aplicarles plenamente los dos esquemas

normativos.  Un reparador de acondicionadores de aire de automóviles, entonces, no tiene que cumplir un número intermedio de requisitos para ejercer su oficio:  ha de reunir cabalmente los requisitos de ambas profesiones.  Esta es la única manera de dar validez a ambos esquemas normativos y armonizar sus disposiciones.

A estos efectos, resulta relevante que, a aquellos técnicos automotrices dedicados a la refrigeración, la ley les requiere "destrezas especiales" para su práctica. 20 L.P.R.A. § 2131(a).  El mismo peticionario, Sr. Roque Adorno, reiteró en su comparecencia que había obtenido una licencia de aprendizaje de técnico de refrigeración, una certificación de estudios de la Mobile Air Conditioning Society, los permisos exigidos por la Junta de Calidad Ambiental y que contaba con el equipo necesario para el tratamiento de los químicos empleados en su industria.

Su apología evidencia que la reparación de acondicionadores de aire de automóviles está tan integrada a la industria de la refrigeración, por las destrezas necesarias para el manejo de materiales, químicos y equipo especializado, que se exige a sus practicantes el mismo entrenamiento, las mismas licencias y los mismos permisos que a los otros técnicos de refrigeración.

**Más aun, el Colegio de Técnicos de Refrigeración y Aire Acondicionado incluye a los acondicionadores de aire de automóviles entre los equipos sujetos al cobro de un sello como garantía de servicio.**

"Los sellos que adoptará el Colegio […] se clasificarán en las siguientes categorías:

[…]

(2)    Sistemas de refrigeración o aire acondicionado de vehículos de motor ........................ $1.00

[…]

El Colegio establecerá mediante reglamento el formulario a utilizarse para la certificación y las definiciones de lo que puede considerarse un sistema doméstico, comercial o industrial." 20 L.P.R.A. § 2079a

El Reglamento para la Certificación, Venta y Fijación de un Sello y para Regular el Programa de Educación Continuada del Colegio de Técnicos de Refrigeración y Aire Acondicionado de Puerto Rico define entre sus términos a los acondicionadores de aire de automóviles.  El reglamento clasifica los sistemas de refrigeración, por razón de su capacidad y fuerza, en domésticos, de automóvil, comerciales e industriales. A los sistemas automotrices les fija un sello de igual monto que el de los sistemas domésticos, salvo que excedan ciertos parámetros, en cuyo caso han de considerarse sistemas "industriales".

Esta clasificación da base a una artimaña semántica de parte del peticionario, que la mayoría del Tribunal equivocadamente reproduce, al escolio núm. 4.  La reparación de un acondicionador de aire, no importa el tamaño, capacidad o fuerza del sistema, es siempre una operación industrial.  La clasificación que hace el Reglamento aludido se refiere al

lugar o espacio que el sistema de refrigeración ha de acondicionar, no a una característica inherente al equipo o al tipo de industria que ha de repararlo.

Es equívoco derivar, de la clasificación de un aire acondicionado, la conclusión que sólo los sistemas "industriales" se han de reparar en una industria. Este razonamiento llevaría a considerar como una operación "doméstica" la reparación de sistemas así clasificados por el reglamento. La analogía no es más que un juego de palabras y, si es un mero recurso ilustrativo, ilustra mal la realidad.

IV

Nos parece patente la conclusión de que un taller de reparación de acondicionadores de aire de automóviles debe clasificarse antes como un taller de refrigeración que como un taller de mecánica automotriz. Tanto los principios de la hermenéutica, como un estudio de la legislación y reglamentación relacionada, así lo ordenan. La concesión de un permiso para operar tal industria en un distrito R-1 resulta entonces ilegal, irrazonable e impropia.

Ante este panorama jurídico debemos concluir que erró tanto A.R.P.E. como J.A.C.L. al autorizar la operación del taller en cuestión. La concesión del permiso mediante excepción fue una acción ultra vires. Procedería, por tanto, confirmar la Sentencia del Tribunal de Circuito de Apelaciones (Hons. Fiol Matta, Rodríguez de Oronoz, González Román).

Hoy este Tribunal permite que en una zona residencial opere un negocio que afectará la calidad de vida de los vecinos y deprimirá su comunidad. No podemos cruzarnos de brazos y permitir que nuestro país se convierta en tierra de nadie al amparo de un permiso concedido indebidamente por una agencia que incumple con su función de implantar el ordenamiento de zonificación en nuestro país.

Por entender que la Opinión de la mayoría del Tribunal permite que A.R.P.E. ignore sus propios reglamentos de zonificación y que esta acción cambiará totalmente las características residenciales de esa comunidad, respetuosamente disentimos.


Federico Hernández Denton
Juez Asociado