Opinión disidente emitida por la
Jueza Asociada Señora Fiol Matta.
La sentencia emitida por este Tribunal concluye que la Junta de Planificación de Puerto Rico no actuó arbitrariamente al aprobar la consulta de ubicación de un proyecto residencial multifamiliar radicado en la calle Tulip del barrio Caimito en el municipio de San Juan. Sin embargo, la decisión de la Junta de Planificación no está sustentada por el expediente administrativo del proyecto propuesto. Por el contrario, el expediente demuestra que la Junta de Planificación actuó arbitraria e irrazonablemente al aprobar dicha consulta. Por eso, disiento.
I
Reiteradamente hemos establecido que al revisar las decisiones administrativas, este Tribunal debe determinar si la agencia actuó arbitraria, irrazonable o ilegalmente. El Tribunal debe evaluar si las determinaciones de hechos de la agencia se sustentan en evidencia sustancial que surja del expediente administrativo y si las conclusiones de derecho son razonables y conforme al Derecho aplicable, según la totalidad de dicho expediente. See. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2175. Véanse, además: Misión Ind. P.R. v. J.C.A., 145 D.P.R. 908, 929 (1998); Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 707-708 (2000); Rivera Concepción v. A.R.Pe., 152 D.P.R. 116, 121-124 (2000); Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 435-438 (1997).
*884 Respecto a las recomendaciones de un oficial examinador, hemos reconocido que aunque la agencia no esté obligada a acogerlas, tiene la obligación de considerarlas, analizarlas y discutirlas razonablemente, pues en estricto Derecho, dichas recomendaciones forman parte del expediente administrativo. Misión Ind. P.R. v. J.C.A., supra, págs. 933-934. Además, cuando la decisión de la agencia es contraria a la recomendación de un oficial examinador, particularmente en cuestiones que dependen del contacto inmediato con la prueba, nuestra función revisara debe ser más rigurosa. Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 208 (1987); Com. de Seguros v. A.E.E.L.A., 171 D.P.R. 514 (2007); J.R.T. v. Escuela Coop. E.M. de Hostos, 107 D.P.R. 151, 157 (1978).
II
La Ley Orgánica de la Junta de Planificación de Puerto Rico, 23 L.P.R.A. see. 62 et seq., le otorga la facultad a la Junta de Planificación para adoptar Planes de Usos de Terrenos que designen la distribución, localización, extensión e intensidad de los usos de terrenos del país. Esta ley exige que exista una relación estrecha entre la designación de los usos del terreno y la disponibilidad de toda la infraestructura física y social. Además, establece que, una vez la Junta de Planificación adopte un plan de usos de terrenos, todo proyecto propuesto deberá estar de acuerdo con las recomendaciones de dicho plan. 23 L.P.R.A. sec. 62m.(1)
*885 De la misma forma, la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (21 L.P.R.A. sec. 4001 et seq.), en armonía con la Ley Orgánica de la Junta de Planificación, 23 L.P.R.A. sec. 62j(14),(2) le concede la facultad a la Junta de Planificación de aprobar los planes de ordenación municipal propuestos por los municipios con el propósito de establecer el uso del suelo dentro de sus límites territoriales. Estos planes deberán cumplir con las políticas públicas, las leyes, los reglamentos u otros documentos del gobierno central relacionados con la ordenación territorial de los municipios, entre estos, los planes de usos de terrenos. 21 L.P.R.A. see. 4602. Véase, además, Sec. 5.01 del Reglamento sobre los Planes de Ordenación Municipal y la Transferencia y Administración de Facultades, Reglamento de Planificación Núm. 24, Reglamento Núm. 5087 de 20 de mayo de 1994 (Reglamento de Planificación Núm. 24).
Hay tres tipos de planes de ordenación municipal: plan territorial, plan de ensanche y plan de área. En lo pertinente a este caso, un plan territorial es un instrumento de ordenación integral y estratégico del territorio municipal que define los elementos fundamentales de tal ordenación. A su vez, un plan territorial consiste de tres componentes: memorial, programa y reglamentación. Un reglamento de *886 ordenación territorial contiene disposiciones sobre la clasificación del suelo municipal y normas sobre el uso, los niveles de intensidad y las características de las estructuras, y el espacio público. Una vez la Junta de Planificación aprueba un plan territorial con su reglamento, toda decisión sobre el uso del terreno municipal se hará conforme a éste. 21 L.P.R.A. see. 4603. Véanse, además, las Secs. 7.01 y 2.00(37) del Reglamento de Planificación Núm. 24.
Una consulta de ubicación es un procedimiento que le permite a la Junta de Planificación autorizar por vía de la excepción, ciertos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas. Además, mediante este procedimiento se evalúan los usos de terrenos propuestos como proyectos de desarrollos extensos o regionales, y usos de terrenos propuestos que pueden afectar significativamente el desarrollo de áreas no zonificadas. El propósito de este procedimiento es evaluar los usos que se proponen y determinar si éstos son cónsonos con la distribución planificada de usos de terrenos en el país. Por eso, la Junta de Planificación requiere expresamente cierta información que le permita llevar a cabo la evaluación. Es en ese momento procesal que la Junta de Planificación debe evaluar la información requerida, si es que ha de cerciorarse —como lo requiere su ley orgánica— que el uso propuesto no viola la reglamentación que establece los usos de terrenos planificados en el país. Sólo así podrá cumplir con la función que le corresponde en la etapa de consulta de ubicación. Esto sin limitar los otros elementos de juicio que la Junta de Planificación puede considerar al evaluar estas consultas, tales como los Mapas de Zonas Susceptibles a Inundaciones y otra reglamentación ambiental aplicable. Sees. 2.00(7) y 7.01 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Reglamento de Planificación Núm. 6031 de 12 de noviembre de 1999.(3)
*887 III
En este caso, los reglamentos aplicables que establecen los usos de terrenos planificados en la ubicación del proyecto propuesto son el Plan de Usos de Terrenos de Puerto Rico y el Plan de Ordenación Territorial del Municipio de San Juan.(4) La Junta de Planificación determinó que el proyecto propuesto cumplía con las metas, los objetivos y las estrategias del Plan de Usos de Terrenos de Puerto Rico. Sin embargo, de forma arbitraria y contraria a las exigencias legales, no consideró el cumplimiento con el Plan de Ordenación Territorial del Municipio de San Juan *888 como factor pertinente a su decisión, sino que se limitó a imponer el cumplimiento con dicho plan, específicamente, con el Reglamento de Ordenación Territorial del municipio, como una condición futura, cuando del expediente administrativo surge que el proyecto propuesto está en clara violación del reglamento.(5)
El proyecto propuesto fue sometido y evaluado como un desarrollo residencial extenso. El Reglamento sobre Planes de Ordenación Territorial del Municipio y la Transferencia y Administración de Facultades establece los requisitos que la Junta de Planificación debe considerar al momento de evaluar este tipo de desarrollo y especifica que sólo se podrá dispensar de éstos a aquellos proyectos que sean para vivienda pública o cuyas circunstancias así lo justifiquen. La Sec. 4.04(c)(2) del Reglamento de Ordenación Territorial del Municipio dispone los requisitos siguientes para los desarrollos residenciales extensos:
(a) Los terrenos en los cuales se propone la urbanización estarán localizados o colindando con el área desarrollada dentro del ámbito de expansión urbana.
(b) La densidad propuesta alcanzará los mínimos y no excederá los máximos establecidos en el Plan de Usos de Terrenos vigente ni el Plan de Ordenación Territorial.
(c) Se celebrará vista pública con notificación a los dueños de los terrenos circundantes cuando el desarrollo residencial ex-tenso tenga acceso a una calle municipal con rodaje menor de 8.00 metros por la cual acceden más de diez (10) estructuras residenciales en una distancia de 250 metros, medidos desde las entradas al proyecto.
(d) Si la infraestructura necesaria para atender las necesidades del proyecto propuesto y para mitigar sus efectos directos e indirectos está disponible o puede proveerse.
(e) El proyecto podrá incluir el desarrollo de una o más estructuras principales en un mismo solar si se propone segregar el mismo.
(f) Se podrá dispensar de los requerimientos de este Reglamento cuando se trate de desarrollos para vivienda pública y las circunstancias así lo justifiquen. (Enfasis suplido.)
*889 Respecto al requisito de tener la infraestructura necesaria para atender las necesidades del proyecto propuesto, la Junta de Planificación lo discutió en sus conclusiones de derecho, haciendo referencia a la infraestructura de energía eléctrica y carreteras e ignorando por completo la necesidad de una infraestructura de agua. La Junta de Planificación expresó lo siguiente:
De la Determinación de Hechos Número 10 surge que el proyecto cuenta con la infraestructura física necesaria para obtener acceso a la carretera y obtener el servicio de energía eléctrica o puede proveerse con relativa facilidad, mediante mejoras requerida por la agencia.
Según el expediente administrativo y el informe de la oficial examinadora, el proyecto propuesto no cuenta con la infraestructura de agua potable y descarga necesaria de aguas usadas, ya que la Autoridad de Acueductos y Alcantarillados (AAA) no ha endosado el proyecto.(6) La Junta de Planificación no exigió que se cumpliera con este requisito antes de aprobarse la consulta de ubicación, sino que arbitrariamente impuso, como condición futura al proyecto, que los proponentes coordinasen con la AAA la conexión a su infraestructura.(7) Esta determinación de la Junta de Planificación no sólo es contraria a la reglamentación aplicable, sino también preocupante, ya que según lo exige la Ley Orgánica de la Junta de Planificación de Puerto Rico, debe haber una estrecha relación entre la designación de *890 los usos del terreno del país y la disponibilidad de toda la infraestructura física necesaria. 23 L.P.R.A. sec. 62m.
Según las determinaciones de hechos de la Junta de Planificación, la “Quebrada Cheo” discurre al sur del terreno del proyecto propuesto y dispone de las escorrentías pluviales de varias urbanizaciones adyacentes, incluyendo parte de las originadas en la calle Tulip. Por esto, la See. 5.03(g) del Reglamento de Ordenación Territorial del Municipio exige que se dedique al uso público una franja de terreno con un ancho mínimo de diez metros lineales a ambos lados del cauce o lecho de dicha quebrada. Aunque la Junta de Planificación reconoce esta exigencia reglamentaria, el expediente administrativo revela que el proyecto propuesto no cumple con dicha exigencia. En primer lugar, en la evaluación ambiental del proyecto propuesto los proponentes afirman que sólo dejarán una franja de cinco metros desde el borde de la quebrada. En segundo lugar, en el Acta de Inspección Ocular que llevó a cabo la propia agencia se dispuso lo siguiente:
Se observó el predio del proyecto en cuestión desde la parte de la quebrada. Auscultando con el plano del proyecto aprobado, en algunas áreas se desglosa una faja de 10 metros con la colindancia con la quebrada, en otras se describe una faja menor de (5 metros). De dejarse los diez metros en toda la colindancia con la quebrada, interferiría con la estructura que albergaría 40 apartamentos. El proponente describió que en algunas áreas no se estipula hacer muro de contención. (Énfasis suplido.)(8)
Contando con esta evidencia en el expediente administrativo, la Junta de Planificación decidió aprobar la consulta de ubicación del proyecto propuesto, en clara violación al Reglamento de Ordenación Territorial del Municipio de San Juan.
*891 Finalmente, la oficial examinadora señaló que en eventos de lluvia abundante el nivel de la “Quebrada Cheo” causa inundaciones al final de la calle Tulip, donde ubica el proyecto propuesto. La resolución de la Junta de Planificación no contradice esta significativa determinación fáctica, sino que la despacha indicando que el predio del proyecto propuesto se encuentra fuera del área inundable. Esto, sin embargo, no es pertinente al asunto de las inundaciones al final de la calle Tulip. El “razonamiento” de la Junta es más bien un non sequitur, puesto que el hecho de que el proyecto propuesto no esté ubicado en zona inundable no implica razonablemente que su impacto en la “Quebrada Cheo” no habrá de incrementar las inundaciones al final de la calle Tulip. Más aún cuando del expediente administrativo surge que no se ha dejado la franja de terreno de diez metros exigida por la reglamentación aplicable.
IV
Por todo lo anterior es evidente que la determinación de la Junta de Planificación no está sustentada por el expediente administrativo ni es conforme al Derecho aplicable, según la totalidad del expediente. 3 L.P.R.A. sec. 2175. Véanse, además: Misión Ind. P.R. v. J.C.A., supra; Mun. de San Juan v. J.C.A., supra; Rivera Concepción v. A.R.Pe., supra; Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra. La Junta de Planificación actuó arbitrariamente al aprobar la consulta de ubicación del proyecto propuesto y no cumplió con su función legal en la etapa de consulta de ubicación, ya que al evaluar la información requerida en dicho momento procesal no se aseguró de que el uso propuesto no estuviera en violación de lo requerido por el Plan de Ordenación Territorial del Municipio de San Juan.
La Junta de Planificación y la sentencia mayoritaria de este Tribunal tratan de justificar la determinación arbitraria de dicha agencia, afirmando que en la próxima etapa del proyecto propuesto la Administración de Reglamentos y Permisos (A.R.Pe.) deberá asegurarse de que se cumplan *892 las condiciones impuestas por la Junta de Planificación. Este argumento no tiene mérito, pues aunque A.R.Pe. debe exigir el cumplimiento con las condiciones impuestas por la Junta de Planificación, las leyes y la reglamentación aplicables, la Junta no puede abdicar su propia obligación de asegurarse de que el proyecto propuesto cumple con la reglamentación que establece los usos de terrenos del país, según la información requerida en la etapa de evaluación de la consulta de ubicación. En el caso ante nuestra consideración sucede todo lo contrario. No es que el proyecto propuesto no incluya información detallada y no requerida en la etapa de consulta de ubicación que demuestre su cumplimiento con el Plan de Ordenación Territorial del Municipio de San Juan, sino que la información requerida en esta etapa revela que el proyecto propuesto está en violación de dicho plan. Si permitimos que la Junta de Planificación actúe de esta manera, entonces la etapa de consulta de ubicación resultaría innecesaria y superflua, ya que A.R.Pe. podría adjudicar la consulta de ubicación en la próxima etapa de evaluación del proyecto.
Por todas estas razones disiento de la sentencia mayoritaria, que revoca la sabia decisión del Tribunal de Apelaciones.

 La Ley Orgánica de la Junta de Planificación de Puerto Rico dispone, en lo pertinente:
“La Junta de Planificación preparará y adoptará Planes de Usos de Terrenos y podrá adoptar aquellos que preparen los organismos gubernamentales y lo entidades que ésta designe. La Junta de Planificación asesorará, coordinará y asistirá a estos organismos y entidades en la preparación de la metodología a utilizarse en la formulación de estos Planes de Usos de Terrenos de manera que en términos físicos y ambientales estén de conformidad con las políticas y estrategias de desarrollo de Puerto Rico adoptadas por la Junta en el Plan de Desarrollo Integral. Los Planes de Usos de Terrenos, dependiendo de si son planes de desarrollo regional, urbano, rural, municipal, o dependiendo de su alcance geográfico, designarán la distribución, localización, extensión, e intensidad de los usos de los terrenos para propósitos urbanos, *885 rurales, agrícolas, de explotación minera, bosques, conservación y protección de los recursos naturales, recreación, transportación y comunicaciones, generación de energía, y para actividades residenciales, comerciales, industriales, educativas, públicas e institucionales. Deberá existir una estrecha relación entre la designación de estos usos de terrenos y la disponibilidad y programación de toda la infraestructura física y social, incluyendo los sistemas de transportación y comunicación. Los Planes de Usos de Terrenos, así como la disponibilidad y programación de la infraestructura física social, serán la base para la preparación y revisión de los mapas de zonificación.
“Toda obra o proyecto a ser realizado por cualquier persona o entidad deberá estar de acuerdo con las recomendaciones de los Planes de Usos de Terrenos, una vez adoptadas por la Junta de Planificación y aprobados por el Gobernador.” (Enfasis suplido.) 23 L.P.R.A. sec. 62m.

 La Junta tendrá las facultades y funciones siguientes:
“Hacer determinaciones sobre usos de terrenos dentro de los límites territoriales del Estado Libre Asociado de Puerto Rico, con sujeción a las normas y requisitos consignados en este Capítulo, o en cualquier otra ley aplicable, para tales casos.” 23 L.P.R.A. sec. 62j(14).

 El Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, págs. 18-19, dispone en lo pertinente:
*887 “La Junta de Planificación, estudiará, tramitará y resolverá las consultas de ubicación, tomando en consideración, entre otros, los siguientes documentos y elementos de juicio'. Ley Orgánica de la Junta de Planificación (Ley Núm. 75 del 24 de junio de 1975, según enmendada), Ley de Municipios Autónomos (Ley 81 del 30 de agosto de 1991, según enmendada); Plan de Desarrollo Integral, Objetivos y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico; Planes de Usos de Terrenos (incluye Mapas de Expansión Urbana); Mapas de Zonificación; Mapas de Zonas Susceptibles a Inundaciones; Planes de Ordenación Territorial, adoptados por la Junta de Planificación y aprobados por el Gobernador; Planes Regionales, adoptados por la Junta y aprobados por el Gobernador; Reglamentos de Planificación y otra reglamentación aplicable; Programa de Inversiones de Cuatro Años, localización específica del proyecto, usos existentes en el sector, situación de la infraestructura física y social en el lugar (calles, acueductos y alcantarillado, energía eléctrica, transportación, recogido de basura, servicio policíaco y otros); rasgos topográficos, condición de inundabilidad, condición del subsuelo, densidad poblacional, grado de contaminación del ambiente, distancia entre los terrenos y las áreas construidas, importancia agrícola, ambiental o turística de los terrenos, y otras condiciones sociales, económicas y físicas análogas.
“Además de lo anterior, en las consultas públicas, se tomará en consideración, entre otros: el costo del proyecto, la disponibilidad y procedencia de fondos, programación de la obra, posibles conflictos con obras de otros organismos gubernamentales. Si se tratare de una transacción, también se considerará la necesidad de la misma, si la propiedad fue ofrecida a otros organismos gubernamentales, conveniencia de que la propiedad pase de pública a privada, y otras leyes aplicables al tipo de transacción.
“La aprobación de una consulta pública no implica, en forma alguna, la aprobación del proyecto de transacción o de construcción en sí, el cual deberá regirse por lo establecido en este Reglamento y por cualquier Resolución de la Junta, eximiendo de la presentación a tal proyecto de transacción o de construcción.” (Énfasis suplido.) Sec. 7.01 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Reglamento de Planificación Núm. 6031, 12 de noviembre de 1999, pág. 26.

 El Plan de Ordenación Territorial del Municipio de San Juan fue aprobado por la Junta de Planificación mediante la Resolución el 9 de octubre de 2002, Núm. JP-PT-18-1, aprobada por la Asamblea Municipal de San Juan mediante la Ordenanza Municipal Núm. 73, serie 2001-2002, 26 de febrero de 2002, y aprobado mediante la Orden Ejecutiva Núm. OE-2003-16 de 13 de marzo de 2003.

 En su resolución aprobando la consulta de ubicación la Junta de Planificación impuso como condición al proyecto propuesto lo siguiente:
“6. Deberá cumplir con el Reglamento de Ordenamiento Territorial del Municipio Autónomo de San Juan.” Apéndice del Escrito de certiorari, pág. 309.

 En lo pertinente, la oficial examinadora señaló:
“Por otro lado, tenemos que considerar que el proyecto no cuenta con la infraestructura necesaria, toda vez que en carta de 14 de febrero de 2003, la Autoridad de Acueductos y Alcantarillados indicó que no endosaba el proyecto propuesto.”

 En la resolución para aprobar la consulta de ubicación, la Junta de Planificación impuso como condición al proyecto propuesto lo siguiente:
“Previo al inicio de la construcción deberá realizar la coordinación correspondiente con la Autoridad de Acueductos y Alcantarillados para la conexión del proyecto propuesto (incluyendo la disposición de las aguas de la piscina propuesta), de manera que la planta de tratamiento de aguas usadas a la cual planean conectarse, las líneas y troncales estén en condiciones de aceptar la descarga de las aguas usadas generadas durante la fase operacional del proyecto. Esto incluye obtener todos los permisos necesarios de dicha agencia, previo a su conexión.” Apéndice del Escrito de certiorari, pág. 308.

 Incluso, el propio plano de ubicación sometido ante la Junta de Planificación e incluido como apéndice en el recurso de certiorari presentado ante este Tribunal demuestra que el proyecto propuesto no deja una franja de diez metros en toda su colindancia con la “Quebrada Cheo”. Lo que es peor, en su recurso de certiorari los peticionarios erróneamente afirman que cumplen con este requisito reglamentario y hacen referencia al plano de ubicación aprobado por la Junta de Planificación que contradice dicha afirmación.