Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Carmen D. Perea Cruz / Reese M. Johnson<br><br>Recurrentes<br><br>vs.<br><br>Automobili Corp. h/n/c Avilés Auto Autos del Este, Inc., Navy Federal Credit Union Universal Insurance Company<br><br>Recurridos | KLRA202400486 | **REVISIÓN ADMINISTRATIVA** procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: CAG-2019-0001364<br><br>Sobre:<br><br>Compra Venta de Vehículos de Motor |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de octubre de 2024.

Comparecen ante nos los esposos, Sra. Carmen D. Perea Cruz (Sra. Perea Cruz) y el Sr. Reese M. Johnson (Sr. Johnson) (en conjunto, el matrimonio Perea-Johnson), mediante recurso de revisión administrativa y solicitan la revocación de la "Resolución" emitida el 16 de abril de 2024,[1] por el Departamento de Asuntos del Consumidor (DACo). Mediante dicha determinación, el DACo declaró No Ha Lugar la "Querella" presentada por el matrimonio Perea-Johnson, en la cual alegaban dolo en la contratación, tras incumplimiento del concesionario de autos con el deber de notificarle al comprador que el vehículo adquirido fue utilizado como uno de alquiler, según exige el Reglamento de Garantías de Vehículos de Motor, *infra.*

---
[1] Notificada el 26 de abril de 2024.

Número Identificador

SEN2024 _____

Examinada la solicitud de autos, el "Alegato en Oposición a Revisión Administrativa" de Automobili Corp./Avilés Auto, Inc. (en conjunto, Avilés Auto), la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, revocamos la "Resolución" del DACo, por los fundamentos que expondremos a continuación.

## I.

El 22 de enero de 2019, el matrimonio Perea-Johnson presentó una "Querella" contra Avilés Auto, Autos del Este, Inc. (Autos del Este), entre otros querellantes. En su escrito, alegaron que, el 19 de enero de 2017, la Sra. Perea compró un vehículo usado KIA Sportage (2017) en el concesionario de autos Avilés Auto. En síntesis, alegaron que el vehículo experimentó problemas mecánicos por años, y que en numerosas ocasiones el vehículo tuvo que ser atendido por Autos del Este, centro de servicio autorizado KIA. Dicho centro de servicio atendió, bajo garantía de manufacturero, problemas de radiador, transmisión y motor, llegándose a reemplazar los tres componentes del vehículo. Por entender que los problemas que experimentó el vehículo van más allá de imperfecciones razonables, el matrimonio Perea-Johnson radicó la "Querella" en controversia. En adelante, incluimos un recuento de las alegadas instancias donde el vehículo experimentó desperfectos mecánicos:

*El 20 de febrero de 2017, mientras el vehículo se encontraba en Autos del Este, el concesionario le informó que el "mataperro" estaba roto, pero que contrario a lo que le habían informado en Avilés Autos, el defecto no estaba cubierto por la garantía. Alegan, además, que durante la visita se le informó al centro de servicio que el vehículo tenía un fallo y que temblaba, pero el centro no hizo nada al respecto.*

*El 7 de junio de 2017, el vehículo sufrió un sobrecalentamiento, cuya causa fue identificada como un desperfecto en las mangas del radiador ya que éste último se encontraba doblado. Dicho problema fue reparado bajo garantía. Se alega que a partir de esa*

*fecha el vehículo comenzó a "dar jalones y cantazos[sic] en la transmisión".[2]*

*El 4 de enero, 28 de febrero, y 31 de mayo, todos del año 2018, mientras el vehículo se encontraba recibiendo mantenimiento, se le comentó el concesionario que continuaban los problemas de cantazos en la transmisión, pero tampoco fueron atendidos.*

*El 19 de julio de 2018 se llevó a cabo un "upgrade" de campana a la transmisión.*

*El 7 de septiembre de 2018 nuevamente se llevó el vehículo al centro de servicio por cantazos en la transmisión y se le hizo un "reset".*

*El 27 de septiembre de 2018 se reportó la continuación de los cantazos de la trasmisión. En dicha ocasión se le notificó a la Sra. Perea que el vehículo estaba mezclando aceite con el "coolant". Además, le indicaron que el vehículo tenía un golpe, que quizás fue resultado de un accidente que tuvo la Sra. Perea con un perro el 23 de mayo de 2018.*

*El 9 de octubre el vehículo llegó al centro de servicio en grúa debido a un problema de sobrecalentamiento. Ante este problema le hicieron una actualización a la transmisión.*

*El 30 de octubre el vehículo llegó nuevamente al centro de servicio en grúa debido a sobrecalentamiento.*

*El 2 de diciembre de 2018, el vehículo experimentó otra vez un episodio de sobrecalentamiento. En esa ocasión se le reemplazó el motor, radiador y base.*

*El 21 de enero de 2019, el vehículo experimentó otro episodio de sobrecalentamiento, y tuvo que ser transportado en grúa.*

Como parte de su proceso investigativo, el 15 de mayo de 2019, el DACo emitió un "Informe de Inspección Vehículos de Motor", en el cual se reportó que el único problema que exhibió el vehículo fue una pequeña vibración durante la prueba de carretera. A raíz de dicho hallazgo, se recomendó que la "Querella" fuese enmendada para incluir al fabricante y su representación en Puerto Rico dado a que las reparaciones fueron hechas bajo garantía. A tales efectos, el 14 de mayo de 2019, el matrimonio Perea-Johnson enmendó la "Querella" para incluir como parte querellada a Motoambar, Inc. y para añadir como alegaciones que: (1) el vehículo fue utilizado como un auto de alquiler, pero dicha información no fue revelada al momento de la compra, y (2) que el

---

[2] *Véase* apéndice del recurso, pág. 278-279.

vehículo sufrió un golpe/choque en su parte inferior, hecho que tampoco fue notificado al momento de la compra.

El DACo emitió un nuevo "Informe de Inspección Vehículos de Motor" el 27 de junio de 2019. En esa ocasión, se reportó que en la prueba de carretera se reflejó un cantazo mientras el vehículo transitaba entre 45 y 50 mph, lo que aparentaba ser una presión en la transmisión. Por otro lado, se notificó que la inspección ocular reflejó una reparación en el área frontal, soporte del radiador y/o "crossmember". El informe, a su vez, contenía la siguiente expresión: "[e]n relación a la procedencia de la unidad, se nos informa que el dueño original lo fue Avis Budget de PR. Una casa de alquiler de renta diaria, con base en Carolina, Puerto Rico".[3] Así las cosas, el 6 de agosto de 2019, la Sra. Perea presentó una "Moción Informativa" con el propósito de enmendar la "Querella" y alegar que los daños que sufrió el vehículo se deben a que dicho automóvil fue usado por Avis Rental (Avis), hecho que nunca se le notificó, de manera verbal o escrita.

Luego de varios trámites procesales impertinentes a la controversia ante nuestra consideración, el 16 de abril de 2024, el DACo emitió "Resolución",[4] y concluyó que el matrimonio Perea-Johnson no presentó evidencia para sustentar su alegación de que el vehículo fue utilizado como uno de alquiler, ni que había sufrido un choque en su parte inferior previo a la compra. Reconoció que, aunque es cierto que el informe de inspección alude a dicha información, la expresión "se nos informa que el dueño original lo fue Avis Budget de PR", no es suficiente para concluir la titularidad de Avis, y mucho menos determinar que hubo dolo en la contratación.

---

[3] *Véase* "Informe de Inspección Vehículos de Motor", pág. 245 del apéndice.
[4] Notificado el 26 de abril de 2024.

Insatisfechos con la determinación del DACo, el 8 de mayo de 2024, el matrimonio Pérez-Johnson presentó "Moción en Solicitud de Reconsideración". El 20 de mayo de 2024, el DACo otorgó un término de 15 días para que las partes querelladas se expresaran. Contando con las posturas de ambas partes, el DACo no emitió determinación alguna dentro del término de 90 días dispuesto por ley. Inconforme, recurre el matrimonio Perea-Johnson ante este foro y señala la comisión de los siguientes errores, a saber:

> *Primer Error: Erró el DACo al no decretar la Resolución del Contrato de Compraventa al no entender que de acuerdo con el Informe Técnico de la propia agencia, se demostró que el vehículo en cuestión, previo a ser vendido era uno de alquiler y no se le informó a la parte compradora por lo que hubo dolo en la contratación.*
>
> *Segundo Error: Erró el DACo al no decretar la Resolución del Contrato de Compraventa al no considerar los defectos presentados por los querellantes como redhibitorios.*

Mediante "Resolución" emitida el 12 de septiembre de 2024, le concedimos a Avilés Auto y Autos del Este un término a vencer el 18 de septiembre de 2024 para someter sus alegatos en oposición. El 23 de septiembre de 2024 emitimos otra "Resolución" otorgándole a Autos del Este una prórroga y estableciendo un término perentorio a vencer el 1 de octubre de 2024. A su vez, le advertimos que, de no comparecer dentro del término concedido, procederíamos a dar por perfeccionado el recurso y a resolverlo sin su comparecencia. Transcurrido el término concedido, sin que Autos del Este haya presentado su alegato en oposición, procedemos a resolver, según le advertimos.

## II.

### A.

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204

DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008). Lo anterior se fundamenta en el conocimiento especializado y la experiencia sobre la materia que su ley habilitadora le confiere. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 436 (1997); *Misión Ind. P.R. v. J.P. y A.A.A.,* 142 DPR 656, 672-673 (1997). En otras palabras, el conocimiento especializado de la agencia justifica que se sostengan sus determinaciones. Por lo que, en virtud de nuestro ejercicio de revisión judicial, le debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. Corrección,* 208 DPR 656, 673-674 (2022); *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.,* 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. A. R. Pe.,* 152 DPR 116, 122 (2000). Esto significa que este Tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS,* 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias,* 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR,* 196 DPR 606 (2016), el Tribunal Supremo

se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> *[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida. Íd.*, en la pág. 628.

Por ende, como norma general, el tribunal revisor le debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión.

**B.**

En virtud de la Ley Núm. 7 del 24 de septiembre de 1979, 10 LPRA sec. 2051 *et seq.*, mejor conocida como la Ley de Garantías de Vehículos de Motor la Ley de Garantías de Vehículos de Motor, según enmendada, el DACo adoptó el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159 del 6 de junio de 2006 (en lo sucesivo, Reglamento de Garantías). Este último cumple varios propósitos, tales como: (1) proteger al consumidor y sus inversiones en la adquisición de vehículos de motor; (2) procurar que el vehículo sea seguro y cumpla con el propósito por el cual fue adquirido; y (3) prevenir prácticas ilícitas en la venta de vehículos de motor. Regla 2 del Reglamento de Garantías, *supra.* Por esta razón, las disposiciones de este cuerpo reglamentario deberán interpretarse liberalmente y en favor del consumidor. Regla 4 del Reglamento de Garantías, *supra.*

En lo que nos concierne, la Regla 30.1 del Reglamento de Garantías, *supra,* dispone que **"[t]odo vendedor estará obligado a notificarle por escrito al consumidor si el vehículo de motor usado que interesa ha sido usado como** taxi, vehículo de transportación pública, **vehículo** de servicio público, **de alquiler**, de demostración o cualquier otra finalidad que conlleve un uso irregular o excesivo". (Énfasis nuestro).

### C.

Una vez radicada una querella ante el DACo, este "podrá iniciar una investigación bajo los poderes y facultades de las Leyes y Reglamentos que administra. La Regla 14.1 del Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 8034 de 14 de junio de 2011 (en lo sucesivo, Reglamento Adjudicativo). Como parte de su investigación, el "Departamento, podrá ordenar la inspección del objeto o del servicio llevado a cabo que motivó la querella, por un representante del Departamento o por persona autorizada a esos efectos". Regla 14.2 del Reglamento Adjudicativo, *supra.* Una vez culminada la inspección, [l]a persona encargada de la investigación o inspección, luego de culminada, preparará en forma detallada un informe que cubra toda la investigación. Regla 14.4 del Reglamento Adjudicativo, *supra.* Una vez notificado el informe, comenzará un periodo de 15 días para presentar una objeción por escrito. Regla 15.2 del Reglamento Adjudicativo. No obstante, **"[s]i no se presentaran objeciones al informe, dentro del término de quince (15) días, se considerará estipulado por las partes relevando la presencia del investigador en la vista administrativa".** Regla 15.3 del Reglamento Adjudicativo, *supra,* (Énfasis suplido).

### D.

En el Art. 1213 del Código Civil de Puerto Rico de 1930, cuerpo jurídico vigente al momento de los hechos ante nuestra

consideración, establece que un contrato cobra vida jurídica cuando concurren los requisitos de: (1) consentimiento de los contratantes, (2) objeto cierto que sea materia del contrato, y (3) causa de la obligación que se establezca. 31 LPRA sec. 3391. Dicho consentimiento "se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato". Art. 1215 del Código Civil de 1930, 31 LPRA sec. 3402. No obstante, el consentimiento será nulo si fue "prestado por error, violencia, intimidación o dolo". Art. 1217 del Código Civil de 1930, 31 LPRA sec. 3404. Según el Art. 1221 del Código Civil de 1930, 31 LPRA sec. 3408, "[h]ay dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro a celebrar un contrato que, sin ellas, no hubiera hecho". Ahora bien, "[p]ara que el dolo produzca la nulidad de los contratos, deberá ser grave y no haber sido empleado por las dos partes contratantes", mientras que "[e]l dolo incidental sólo obliga al que lo empleó, a indemnizar daños y perjuicios". Art. 1222 del Código Civil de 1930, 31 LPRA sec. 3409.

Se ha entendido que "**[e]l elemento objetivo del dolo puede consistir** en cualquier conducta como 'astucias, argucias, mentiras, sugestiones, y artificios", al igual que la "invención de hechos falsos, **en la ocultación de los [hechos] existentes** o en suministrar referencias incompletas de éstos' ". *SLG Ortiz-Alvarado v. Great American,* 182 DPR 48, 64-65 (2011) (citas omitidas) (Énfasis nuestro). El Tribunal Supremo, además, ha establecido que el dolo "se caracteriza como **la infracción voluntaria y consciente de un deber jurídico que ocasiona al otro contratante un perjuicio del que debe responder**". *Íd.* en la pág. 68, citando a *Márquez v. Torres Campos,* 111 DPR 854, 865 (1982) (Énfasis suplido).

Sabido es que, el dolo incidental es aquél que no tiene una influencia decisiva en la esencia de la obligación. *Colón v. Promo Motor Imports, Inc.,* 144 DPR 659, 667 (1997). Por otra parte, el dolo grave, también conocido como dolo causante, es aquel "que causa, motiva, sirve de ocasión y lleva a celebrar el contrato, de modo tal que, sin él, éste no se hubiera otorgado". *Íd.* (citas omitidas). Por tanto, **es el dolo grave el dolo que anula el consentimiento, ya que "se afecta el consentimiento que inspira y persuade al contratante**". *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 886 (2008) (Énfasis provisto). En nuestro ordenamiento jurídico también existe la figura del dolo por omisión. En el caso *SLG Ortiz-Alvarado v. Great American, supra,* en la pág. 66, nuestro Tribunal Supremo estableció que "para que se configure el dolo no es siempre necesaria una acción afirmativa", ya que **el silencio puede constituir dolo**; para que se considere como tal, **es necesario que "exista**, por la razón que sea, **un deber de informar**" *Íd.* (Énfasis nuestro). *Véase* también *García Reyes v. Cruz Auto Corp., supra.*

Finalmente, debemos mencionar que, el Art. 1255 del Código Civil de 1930, 31 LPRA sec. 3514, establece que una vez "[d]eclarada la nulidad de una obligación, los contratantes deben restituirse recíprocamente las cosas que hubiesen sido materia del contrato, con sus frutos, y el precio con los intereses".

**III.**

En su recurso, el matrimonio Perea-Johnson arguye que, Avilés Auto incumplió con el requisito esbozado en la Regla 30 del Reglamento de Garantías, *supra,* la cual exige que se les notificara por escrito el hecho de que el vehículo fue previamente utilizado como vehículo de alquiler. Argumentan, además, que este último hecho fue plasmado en el Informe del 27 de junio de 2019, y que, en ausencia de una objeción por Avilés Auto a dicho informe,

según exige el Reglamento Adjudicativo, *supra,* su contenido fue estipulado, convirtiendo el antedicho hecho en una admisión de parte. Por todo lo anterior, argumentan que el contrato de compraventa suscrito entre Avilés Auto y la Sra. Perea es nulo, toda vez que hubo dolo en la contratación habida cuenta la inexistencia del elemento esencial de consentimiento. Le asiste la razón.

Comencemos atendiendo la controversia relacionada a la aseveración hecha por el DACo en su "Informe de Inspección Vehículos de Motor" del 27 de junio de 2019. En el aludido informe, el técnico del DACo incluyó en sus hallazgos que "[e]n relación a la procedencia de la unidad, se nos informa que el dueño original lo fue Avis Budget de PR. Una casa de alquiler de renta diaria, con base en Carolina, Puerto Rico".[5] La parte querellada/recurrida poseía, al amparo de la Regla 15.3 del Reglamento Adjudicativo, *supra,* 15 días para objetar el informe, de encontrarse inconforme con los hallazgos del inspector. Sin embargo, no surge del expediente ante nuestra consideración ni de la "Resolución" del DACo que Avilés Auto levantara objeción sobre lo aseverado en el Informe. Incluso, en su "Alegato en Oposición a Revisión Administrativa", Avilés Auto indica que "[n]inguno de los tres informes de inspección fue objetado por ninguna de las partes".[6]

Ante dicha inacción, el contenido del informe fue estipulado según dispone la Regla 15.3 del Reglamento Adjudicativo, *supra.* El efecto de esta estipulación fue eximir al matrimonio Perea-Johnson de desfilar prueba sobre la anterior titularidad de Avis Rental, ya que es de aplicación "el axioma de que *ante admisión de parte, relevo de prueba*". *Díaz Díaz v. Asoc. Res. Quintas San Luis*, 196

---

[5] *Véase* "Informe de Inspección Vehículos de Motor", pág. 245 del apéndice.
[6] "Alegato en Oposición a Revisión Administrativa", pág. 6.

DPR 573, 582 (2016); *Pueblo v. Rexach Benítez,* 130 DPR 273, 342 (1992). Determinado que el vehículo objeto de la presente acción fue utilizado como auto de alquiler, procedemos con la próxima controversia, entiéndase, el incumplimiento del deber jurídico de comunicar dicho hecho.

Como ya discutimos, constituye dolo por omisión cuando ocurre una ocultación de hechos que provoca una infracción de un deber jurídico. Cuando el contratante guarda silencio e incumple con un deber de informar, y la información que calla es decisiva en la otorgación del consentimiento, se provoca un dolo grave, o causante, que tiene el efecto de anular el consentimiento, y con este, el contrato.

En el presente caso, Avilés Auto, tenía un deber jurídico, al amparo de la Regla 30.1 del Reglamento de Garantías, *supra,* de notificar verbalmente y por escrito, el hecho de que el auto fue utilizado como vehículo de alquiler. No obstante, Avilés Auto incumplió con su deber ya que nunca informó a la Sra. Perea de este hecho. Concluimos que esta omisión constituye un vicio en el consentimiento porque es evidente que, el hecho de que el vehículo a venderse fue utilizado como uno de alquiler, es un factor decisivo en el análisis que lleva a cabo un comprador al momento de determinar si, en efecto, compraría o no dicho vehículo. Si no lo fuera, no existiría un deber jurídico de informarlo. No podemos ignorar que el propósito de la advertencia es que el contratante esté informado del historial del vehículo y consciente de cómo su uso irregular o excesivo pudo afectar su condición, o incluso provocar defectos que se pudiesen manifestar luego de vendida la unidad. Incertidumbre que se tornó en realidad para la Sra. Perea, evidenciado por todos los problemas que, según la "Querella" y la propia "Resolución" del DACo, experimentó el vehículo poco después de la compraventa.

Por todo lo anterior, determinamos que hubo dolo grave en la contratación y que, en consecuencia, el consentimiento prestado por la Sra. Perea fue nulo. Ante inexistencia de uno de los requisitos esenciales para la contratación, declaramos, a su vez, nulo el contrato de compraventa. Así las cosas, resolvemos que, ante la nulidad del contrato, lo procedente es la devolución de las contraprestaciones, según establece el Art. 1255 del Código Civil de 1930, *supra.*

**IV.**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, revocamos la "Resolución" dictada por el DACo, declaramos la nulidad del contrato de compraventa y ordenamos la devolución de las contraprestaciones.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones