Estado Libre Asociado de Puerto Rico v
TRIBUNAL DE APELACIONES
PANEL XI

| MUNICIPIO AUTÓNOMO DE VEGA BAJA y CARLOS RODRÍGUEZ VÉLEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE DESARROLLO Y COMERCIO, OFICINA DE GERENCIA DE PERMISOS y QMC TELECOM, LLC<br><br>Recurrida<br><br>RUTH VÁZQUEZ RIVAS<br><br>Parte Interventora | TA2025RA00395 | REVISIÓN JUDICIAL Procedente del Departamento de Desarrollo y Comercio, Oficina de Gerencia de Permisos<br><br>Revisión Administrativa Núm.: 2023-508432-SDR-302996 impugnando el Permiso de Construcción Núm.: 2020-307751-PCOC-020918<br><br>Sobre: Impugnación de Permiso de Construcción |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 30 de enero de 2026.

El 10 de diciembre de 2025, el Municipio Autónomo de Vega Baja y el Sr. Carlos Rodríguez Vélez (la parte recurrente) acudieron ante nos mediante *Recurso de Revisión Judicial* para solicitarnos la revocación de la *Resolución de Revisión Administrativa* emitida en el caso de epígrafe con fecha del 4 de diciembre de 2025. Por virtud del aludido documento, la División de Revisión Administrativa de la Oficina de Gerencia de Permisos (División) declaró No Ha Lugar la revisión administrativa que la parte recurrente presentó ante su consideración para impugnar el Permiso de Construcción número 2020-307751-PCOC-020918 y sostuvo el aludido permiso.

Estudiado el legajo apelativo, confirmamos la determinación recurrida. Veamos.

**-I-**

Conforme surge del expediente ante nos, el 9 de diciembre de 2021, QMC Telecom, LLC (QMC) presentó ante la Oficina de Gerencia de Permisos (OGPe) una solicitud de permiso de construcción bajo el trámite 2020-307751-PCOC-020918.[1] El 19 de diciembre de 2022, la OGPe emitió el Permiso de Construcción. En desacuerdo con tal acción, tanto la Sra. Ruth Vázquez Rivas, como el Municipio de Vega Baja y la Sra. Ana Elsie Crespo presentaron separadamente dos recursos de revisión administrativa ante la División de Revisiones Administrativas de la OGPe (División).

En lo concerniente, la solicitud de revisión administrativa presentada en ese momento por el Municipio y la señora Ana Elsie Crespo-caso 2023-472444-SDR-011410, se alegó que, por las razones allí dadas, la OGPe se equivocó al otorgar el permiso de construcción que impugnaban sin una debida consulta de ubicación para otorgar la debida variación. Habiéndose consolidado ambas solicitudes de revisión administrativas, y luego de los trámites de rigor- que incluyeron la celebración de vistas administrativas, el 9 de mayo de 2023, la División emitió *Resolución de Revisión Administrativa*.

En lo pertinente al caso, es importante consignar que, en el aludido dictamen, la División, luego de recoger los distintos testimonios que recibió en la audiencia, emitió sus conclusiones de derecho. Así, en primer lugar, resolvió que a las circunstancias del caso en dicho momento le eran de aplicación el Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios con vigencia de 2 de enero de 2021.

---

[1] El proyecto propuesto fue la construcción de unas facilidades de telecomunicaciones a ubicarse en el Residencial El Rosario #30, Barrio Pugnado Afuera, en el Municipio de Vega Baja, Puerto Rico.

Luego de ello, resolvió que, en cuanto al permiso de construcción en controversia, QMC cumplió con el proceso de notificación.[2] Por último, atendió el reclamo de los recurrentes sobre la alegada prohibición de ubicación de torres en áreas susceptibles a deslizamientos según el "*Map depicting susceptibility to landslides triggered by intense rainfall, Puerto Rico: U.S. Geological Survey Open-File Report 2020-1022*" y la Sección 9.11.23, inciso b, del Reglamento Conjunto del 2020. Específicamente, sobre este último asunto, se consignó lo siguiente:

> Conforme a la prueba presentada en la vista de revisión y la totalidad del expediente administrativo quedó demostrado que en este caso es necesario que se realice un estudio con perforación o los estudios pertinentes según dispone la reglamentación, y que se pueda emitir el estudio geotécnico final, y la OGPe pueda emitir la determinación sobre la solicitud de permiso de construcción. Para esto se deberá tramitar una solicitud de corte y poda de forma que se provea el acceso adecuado a la maquinaria para realizar dicho estudio. Según fue presentado en la vista de revisión en la propiedad donde se propone la construcción de las facilidades de telecomunicaciones existe un mogote y en este una cueva, asunto que no estuvo ante la consideración de la OGPe, o al menos, tal información no surge claramente del expediente del permiso de construcción ante nosotros.
>
> Durante la vista de revisión, el Art. Edgar R. Montañez Pérez, de la parte Proponente-Concesionaria, indicó que las recomendaciones del estudio geotécnico son preliminares, y hasta tanto que no se haga el estudio no se puede realizar la construcción. Expresó, además, que en el Mapa USGS no existe prohibición por la susceptibilidad a deslizamiento, y que hay que hacer un estudio para ello. Señaló que el próximo paso es el permiso de corte y poda, el cual requiere un permiso de construcción aprobado.
>
> Examinada la prueba presentada en Sala y la obrante en el expediente, concluimos que la presunción de corrección que permea a la determinación de la OGPe fue rebatida por la parte Recurrente. Nuestro más alto foro ha reiterado que en nuestra jurisdicción las determinaciones de las agencias administrativas gozan de una presunción de regularidad y corrección. Rivera Concepción v. Administración de Reglamentos y Permisos, 152 DPR 116 (2000). Por lo tanto, la parte que impugna una determinación de una agencia administrativa le corresponde establecer que la misma se tomó en ausencia de evidencia sustancial. Asociación de Vecinos H. Sn Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000); Henríquez v. Consejo de Educación Superior, 120 DPR 1954, 210 (1987). Cuando hablamos de sustancial hacemos referencia a "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión." Empresas Ferrer Inc. v. Administración De Reglamentos, 172 DPR 254; Hernández v. Centro Unido de Detallistas, 168 DPR 592; Otero v. Toyota, 163 DPOR 716 (2005).

---

[2] Véase, págs. 27 y 28 de la *Resolución de Revisión Administrativa* emitida el 9 de mayo de 2023 en las revisiones consolidadas número 2023-472427-SDR-011409 y 2023-472427-SDR-011410.

A base de la totalidad del expediente administrativo y la prueba presentada durante la vista de revisión para procede dejar sin efecto del permiso de construcción 2020-3077751-PCOC-020918 objeto de revisión. La parte Proponente-Concesionaria reconoció la necesidad de realizar un estudio de estabilidad de suelo por un geólogo o ingeniero autorizado sobre el terreno. Según quedó demostrado en la vista, el estudio geotécnico es uno preliminar y no se realizó el estudio del suelo con perforaciones para que el mismo fuera uno final. **Consideramos que debido a que no se tuvo un estudio geotécnico final con pruebas del suelo, procede que se realice dicho estudio, para determinar si el proyecto propuesto ubica en un área susceptible a deslizamientos**. Se acoge la recomendación del Oficial Examinador. (énfasis nuestro).

**La resolución emitida en el caso advino final y firme, pues ninguna de las partes acudió en revisión judicial.** Así las cosas, habiéndose sometido por QMC los referidos estudios, el 8 de julio de 2025, notificada el día 17 del mismo mes y año, OGPe emitió el Permiso de Construcción 2020-307751-PCOC-020918. En desacuerdo con tal acción, el 6 de agosto de 2025, el Municipio y el Sr. Carlos Rodríguez Vélez, presentaron el recurso de revisión administrativa 2023-508432-SDR-302996. Es meritorio mencionar que entre los errores que le fueron señalados a la OGPe, la parte recurrente nuevamente adujo que la agencia erró al conceder el permiso sin una consulta de ubicación para otorgar la variación; error que había sido presentado dentro del caso 2023-472444-SDR-011410.[3] Igual de importante es señalar que, como parte del trámite administrativo, QMC solicitó la desestimación de dicho recurso, mientras que la parte recurrente sometió la correspondiente oposición, la que QMC replicó. Igualmente es necesario señalar que la parte recurrente sometió una *Solicitud de Sentencia Sumaria*, a la que QMC se opuso.

Mientras tanto, el 1 de octubre de 2025, la División emitió *Aviso de Vista de Revisión Administrativa* para el 22 de octubre de 2025. Allí, también prorrogó el plazo de adjudicación de la controversia por treinta (30) días adicionales. Celebrada la audiencia, el 3 de diciembre de 2025, el Oficial

---

[3] Si bien así aseveró ante la OGPe, y en el inciso 30 de su relación de hechos materiales y pertinentes indica que para la otorgación del permiso del trámite tal consulta no fue realizada, notamos que en la discusión de los errores señalados ante nos nada argumenta en cuanto a esto.

Examinador rindió su informe. Al día siguiente, la División emitió el dictamen recurrido.

Allí, dentro de las determinaciones de hechos, se recogió lo ocurrido durante la vista administrativa celebrada. Especialmente, se señaló que la parte recurrente argumentó la necesidad de una Determinación de Impacto Ambiental dada la existencia de un mogote y una cueva en el lugar donde ubicaría el proyecto propuesto. Según también allí se indicó, en respuesta a este argumento QMC planteó que ello no era así, pues la Determinación de Impacto Ambiental se solicita cuando hay un impacto significativo, un cambio en el uso que se le va a dar al suelo o a una calificación y que, de lo contrario, debe solicitarse una determinación y recomendación ambiental, las que se aprobaron para el proyecto.[4]

De otra parte, y como parte de las conclusiones de derecho del dictamen, se resolvió aplicar a la controversia las disposiciones del Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios del 16 de junio de 2023. Acto seguido, la División hizo alusión a la decisión emitida el 9 de mayo de 2023. Al hacerlo, destacó que en dicha ocasión la División resolvió que para el permiso de construcción en controversia se cumplió con el proceso de notificación y que dicho tipo de permiso no conllevaba determinaciones de hecho y conclusiones de derecho. Así pues, dictaminó que los errores señalados por la parte recurrente con relación a estos asuntos no serían atendidos, pues ya habían sido previamente atendidos mediante resolución que advino final y firme.

De igual manera, en la resolución recurrida, la División estimó que la decisión emitida el 9 de mayo de 2023, dejó sin efecto el permiso y devolvió el caso a la OGPe basándose **<u>exclusivamente</u>** en que "el estudio geotécnico presentado en aquel momento se trataba de uno preliminar y no

---

[4] Véase pág. 19 de la resolución recurrida. Anejo 2, Entrada #1 SUMAC-TA.

se había realizado un estudio de suelo con perforaciones."[5] A la vez, se entendió que, al volver a evaluar el caso, la OGPe no solo recibió los estudios ordenados, sino que luego de considerarlos concluyó meritorio incluir como condición especial el que se cumpliera con todas las recomendaciones contenidas en el aludido estudio. *Id.*

Encima de ello, en la resolución recurrida la División atendió el reclamo de prohibición de ubicación de torres en áreas susceptibles a deslizamientos levantado por la parte recurrente. Así, señaló que la misma solamente se encontraba en la sección 9.11.2.3b del Reglamento Conjunto, También, coincidió con la interpretación hecha por la OGPe en cuanto a que: "lo recomendado por la USGS es que se hagan los estudios pertinentes de modo que se puedan tomar las medidas correspondientes en aquellas áreas que se consideren como susceptibles de deslizamiento por lluvias intensas".

Habida cuenta de todo lo anterior, la División encontró que OGPe actuó correctamente y que no se justificaba revocar la determinación. Consignó que QMC y la OGPe cumplieron con la *Resolución de Revisión Administrativa* del 9 de mayo de 2023; la corporación, al someter los estudios ordenados y la agencia al evaluar el caso e incorporar como condiciones especiales las recomendaciones de este. Dicho esto, denegó la solicitud de revisión administrativa núm. 2023-508432-SDR-302996, sosteniéndose el permiso emitido.

Inconforme, la parte recurrente sometió el recurso de epígrafe y señaló la comisión de los siguientes errores:

> **PRIMER SEÑALAMIENTO DE ERROR: ERRÓ LA DRA-OGPE AL CONFIRMAR EL PERMISO DE CONSTRUCCIÓN IMPUGNADO BASADO EN DOS ESTUDIOS QUE SUSTANTIVAMENTE SOLO NEGABAN LA SUSCEPTIBILIDAD ALTA A DESLIZAMIENTO QUE HABÍA SIDO DETERMINADA PREVIAMENTE EN EL TRÁMITE MEDIANTE LITIGACIÓN DEL HECHO, CON TESTIMONIO, PRUEBA DOCUMENTAL Y PERICIAL Y SU OPORTUNIDAD A LAS PARTES DE REFUTARLA, Y SU ADJUDICACIÓN**

---

[5] *Id.*, pág. 21.

**FINAL Y FIRME YA; SIN QUE LOS RECURRIDOS PRESENTARAN NINGUN ESTUDIO, DOCUMENTO NI PLANOS QUE MITIGARAN EL RIESGO A DAÑO DE LA SUSCEPTIBILIDAD YA DETERMINADA; ABUSANDO DE SU DISCRECIÓN Y ERRANDO EN NO APLICAR LAS DOCTRINAS DE IMPEDIMENTO COLATERAL POR SENTENCIA Y/O LEY DEL CASO.**

**SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ LA DRA-OGPE AL NO INTERPRETAR LA LEY BAJO EL CRISOL DE LOS HECHOS DETERMINADOS DEL CASO, ERRANDO ASÍ EN LA INTERPRETACIÓN DEL DERECHO EN SUS CONCLUSIONES DE DERECHO.**

Atendido el recurso, el 16 de diciembre de 2025, notificada el día siguiente, emitimos *Resolución* mediante la que ordenamos a la parte recurrida a comparecer y expresar su posición dentro del término establecido por nuestro reglamento para ello.[6] El 12 de enero del año en curso QMC sometió su *Alegato de la Parte Recurrida.* Mientras, la OGPe compareció el 23 de enero de 2026, y sometió *Oposición a Recurso de Revisión Judicial*.

Contamos con la comparecencia de todas las partes, por lo que damos por sometido el asunto y procedemos a resolver.

-II-

*A.*

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq*. A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. 3 LPRA Sec. 9671. Sobre el alcance de esta revisión, la Sección 4.5 de la LPAU establece que las determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el

---

[6] Ello, conforme a la Regla 63 del Reglamento del Tribunal de Apelaciones, según enmendado, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, 215 DPR ____ (2025).

expediente, mientras que las conclusiones de derecho serán revisables en todos sus aspectos.[7]

En nuestro ordenamiento jurídico ha sido la norma general por años que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. Ahora bien, recientemente nuestro Tribunal Supremo, en consideración del lenguaje específico de la Sección 4.5 de la LPAU, adoptó la normativa establecida en *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024). Así pues, concluyó que la interpretación de las leyes es una tarea inherente de los tribunales. En virtud de ello, enunció que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos y no guiarse por la deferencia automática que se aplica a estas decisiones. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR _____.

En el citado caso el Tribunal Supremo de Puerto Rico expresó que:

[A]l ejercitar dicho criterio, los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias. . . . Sin embargo, tales interpretaciones constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Íd.* (cita depurada).

En ese sentido, nuestro más alto foro enfatizó que "[…] los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Pero principalmente, contrario a la práctica de las pasadas décadas, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua." (énfasis en el original)

No obstante, es importante destacar que en el citado caso nuestro más alto foro no modificó la evaluación y respetó las determinaciones de

---

[7] 3 LPRA Sec. 9675.

hechos alcanzadas por las agencias. Así pues, prevalece todavía la norma de que, para impugnar la razonabilidad de la determinación administrativa, es necesario que la parte recurrente señale la prueba en el récord que reduzca o menoscabe el peso de la evidencia que obra en el expediente administrativo. *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999) (citando a *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953)). La misma debe ser suficiente como para que pueda descartarse en derecho la presunción de corrección de la determinación administrativa, no pudiendo descansar en meras alegaciones. *Com. Vec. Pro-Mej., Inc. v. JP*, 147 DPR 750, 761 (1999). El criterio rector para examinar una decisión administrativa es la razonabilidad de la actuación de la agencia recurrida. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013).

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012) (citando a *Empresas Ferrer v. A.R.PE.*, 172 DPR 254, 264 (2007).

*B.*

La Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009,[8] (Ley 161-2009) fue aprobada con el fin de reformar y transformar el sistema de obtención de permisos. La misma, provee el marco jurídico para la solicitud, evaluación y concesión de inspecciones, querellas, certificaciones, consultas, autorizaciones y cualquier trámite necesario o que incida de forma alguna en la operación de un negocio en Puerto Rico, así como determinaciones finales y permisos para desarrollos

---

[8] 23 LPRA sec. 9011 et seq.

de proyectos de construcción. *Díaz Vázquez et als. v. Colón Peña et als.*, 214 DPR 1135, 1142 (2024). Por virtud del mencionado estatuto, se transfirió a la OGPe la jurisdicción para evaluar, conceder o denegar permisos relacionados con el desarrollo de obras de construcción y el uso de terrenos. *Id.*, al citar el Art. 8.1 de la Ley 161-2009, 23 LPRA sec. 9018.

*C.*

De otra parte, y con respecto a la controversia que hoy atendemos, es importante mencionar la *Ley sobre la Construcción, Instalación y Ubicación de Torres de Telecomunicaciones de Puerto Rico*, según enmendada, Ley Núm. 89-2000, 27 LPRA secs. 321 *et seq.* (Ley 89-2000). Este estatuto, si bien reconoce que la Ley Federal de Telecomunicaciones ocupa el campo en cuanto a la evaluación del efecto ambiental de las emisiones de radio, a su vez destaca que conforme la Sección 740 de dicha ley, el gobierno estatal conserva autoridad con relación a la ubicación, construcción y modificación de facilidades de telecomunicaciones inalámbricas.[9] A tenor con la autoridad reconocida, La Ley 89-2000, faculta a la Junta de Planificación a establecer, por la vía reglamentaria, los requisitos de anclaje, materiales y diseño para la construcción de las torres de telecomunicaciones.[10]

Así pues, y cónsono con este mandato, se aprobó el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, Reglamento Núm. 9473 de 16 de junio de 2023 (Reglamento 9473). El Capítulo 9.11 de este reglamento regula los proyectos de construcción, instalación y ubicación de torres e instalaciones de telecomunicaciones.

Según la Regla 9.11.1, Sección 9.11.1.1, del Reglamento 9473, dispone dicho capítulo, "se adopta al amparo y en armonía con las disposiciones de la Ley 89-2000 conocida como *Ley Sobre la Construcción, Instalación y*

---

[9] Véase, Art. 4 de la Ley 89-2000, 27 LPRA sec. 322.
[10] 27 LPRA sec. 324

*Ubicación de Torres de Telecomunicaciones en Puerto Rico*". Mientras, y tal cual el inciso a de la Sección 9.11.1.3 del mismo indica, sus disposiciones serán aplicables a los proyectos de instalación y ubicación de torres dentro de los límites territoriales de Puerto Rico.

La Regla 9.11.2 del Reglamento 9476 regula la ubicación de las torres de telecomunicaciones. Esta, en su sección 9.11.2.1 establece las disposiciones generales, mientras que en la 9.11.2.2 cubre la ubicación en áreas ecológicamente sensitivas y en la 9.11.2.3 señala las prohibiciones. Particularmente, en esta última sección mencionada, se dispone que no se permitirá la instalación y ubicación de torres y de instalaciones de telecomunicaciones en:

a. un radio de cuatro (4) millas del emplazamiento del Centro de Radio-astronomía (Observatorio de Arecibo) según establecido mediante la Ley Núm. 88 de 14 de junio de 1960, según enmendada.

b. Terrenos clasificados como susceptibles a deslizamientos por el Servicio Geológico de los Estados Unidos del Departamento del Interior (USGS).

c. Estructuras designadas por la JP como sitio o zona histórica, en los centros fundacionales de los pueblos, entiéndase las plazas de recreo y bloques circundantes.

d. No se permitirá la construcción de estas instalaciones en áreas ubicadas dentro del cauce mayor.

Por su parte, la Regla 9.11.3 establece los requisitos para las obras de telecomunicaciones. Así, su sección 9.11.3.1 dicta que, con toda solicitud de recomendaciones sobre obras para infraestructura de telecomunicaciones, deberán incluirse los siguientes documentos:

a. Localización del proyecto conforme a la sección 2.1.6 del Tomo II del Reglamento;

b. Detalle sobre el alcance del proyecto y sus elementos.

c. Si el proyecto es uno a ser desarrollado en etapas, se requerirá presentar un programa de trabajo que incluya las fechas de comienzo y fin de cada etapa.

d. En el caso de construcción de nuevas torres, se deberá indicar la cantidad y capacidad de *carriers* que podrá tener.

**-III-**

Según enunciamos al exponer el trámite procesal, en su recurso la parte recurrente señala la comisión de dos (2) errores. En síntesis, sobre el primero, argumenta que la División abusó de su discreción al ignorar las determinaciones finales y firmes contenidas en la *Resolución sobre Revisión Administrativa* dictada el 9 de mayo de 2023 con relación al permiso de construcción en controversia.

Así pues, plantea que la OGPe debió aplicar la doctrina de impedimento colateral sobre los hechos determinados en la resolución dictada el año 2023, cuyos asuntos constituyen la ley del caso. Específicamente: (a) que en el lugar donde se aprobó la construcción del permiso impugnado había un mogote con una cueva y que ubicaban en la fisiografía cársica; (**b) que el terreno donde se proponía la construcción de la torre era de alta susceptibilidad a deslizamiento**. A juicio de la parte recurrente, la decisión recurrida no es apropiada. Es más, asevera que la actuación administrativa constituyó abuso de discreción pues concedió gran peso y valor a los estudios presentados por QMC en lugar de sostener las determinaciones previamente emitidas.

Por otro lado, al discutir su segundo señalamiento de error, expone que según fue declarado y determinado en la resolución del 9 de mayo de 2023, el mogote ubicado en donde el proyecto ha sido propuesto tiene un valor ecológico, escénico y es de valor para el Municipio. Añade entonces, que al ser obvio que el mogote y la cueva serán afectados por la construcción, las leyes que cita exigen que se cumpla con lo relativo a las declaraciones de impacto ambiental.

Tras estos argumentos, la parte recurrente nos pide intervenir con la decisión recurrida. A su entender, al concluir que la Determinación Ambiental y Recomendación Ambiental que contiene el expediente

administrativo era suficiente para emitir el permiso de construcción, la OGPe interpretó erróneamente la ley, lo que justifica nuestra intervención.

QMC, por su parte, al oponerse al recurso establece que, contrario a lo argumentado por la parte recurrente, el expediente administrativo no contiene pronunciamiento previo alguno que impidiese el desarrollo porque el terreno era susceptible a deslizamiento. En contrario, señala que en dicha ocasión lo que se dispuso es que la OGPE debía obtener un estudio geotécnico final para determinar si los terrenos eran o no susceptibles a deslizamiento como condición a expedir el permiso; lo que fue cumplido. Añade que, habiéndose evaluado los estudios sometidos, la OGPe aprobó el permiso con la condición de que se cumpliera con las recomendaciones de estos.

De forma similar, en su comparecencia la OGPe niega que en algún momento en el caso se determinó que los suelos del predio propuesto adolecían de una susceptibilidad a derrumbes que impidieran la construcción de la torre propuesta. Adujo que, más bien, y ante la evidencia sobre la presencia de una cueva, se resolvió la necesidad de un estudio específico sobre la estabilidad del terreno para poderse emitir una decisión correcta en derecho. Igualmente, niega la necesidad de una Declaración de Impacto Ambiental, pues esto se requiere cuando se ha determinado que la acción propuesta conllevará un impacto significativo sobre el ambiente; cosa que no ocurrió en la situación de autos.

Con el fin de disponer del recurso, hemos estudiado detenidamente la *Resolución de Revisión Administrativa* dictada el 9 de mayo de 2023, así como aquella emitida el 4 de diciembre de 2025. También, hemos repasado las distintas disposiciones legales citadas por las partes. Particularmente, aquellas aludidas por la parte recurrente en apoyo de su impugnación.

Al así hacer, nos hemos percatado que QMC y la OGPE tienen razón al señalar que la *Resolución de Revisión Administrativa* del 9 de mayo de 2023

no contiene pronunciamiento alguno mediante el cual- tal cual cita la parte recurrente- se haya resuelto en definitiva que el terreno donde se propuso la construcción de la torre es de alta susceptibilidad a deslizamiento. Al contrario, notamos que a los fines de demostrar que en el caso había sido resuelta la susceptibilidad a deslizamientos del terreno la parte recurrente hace alusión a las determinaciones de hechos allí contenidas.[11] Una lectura de este dictamen nos permite apreciar que la sección identificada como *Determinaciones de Hechos* contiene un recuento del trámite procesal del caso, así como un resumen de los testimonios vertidos durante la audiencia administrativa. Nos parece que, al ser así, la fracción aludida por la parte recurrente como una determinación final y firme que no fue refutada es meramente parte del recuento de un testimonio y no tiene la implicación dada por esta al citarle.

La ausencia de tal pronunciamiento impide la aplicación de la doctrina de cosa juzgada y la ley del caso como plantea la parte recurrente debió hacerse en la discusión de su primer señalamiento de error. Al final de cuentas, tal como arriba destacamos, en ese momento, y tras haber recibido toda la evidencia que las partes sometieron, la División resolvió que el caso fuera devuelto a la OGPe solamente porque cuando se emitió el permiso de construcción en ese entonces no tuvo ante su consideración un **estudio geotécnico final** con pruebas del suelo que permitiera determinar si en efecto el área donde ubica el proyecto propuesto- en donde se demostró la presencia de un mogote- era susceptible o no a deslizamientos. Entiéndase, que sólo se estaba dejando sin efecto el permiso, para atender exclusivamente este punto.[12] De ahí que, habiéndose dado cumplimiento a

---

[11] Véase inciso 34 de la relación de hechos materiales y pertinentes, págs. 14 y 15 del *Recurso de Revisión Judicial*

[12] Recordemos que, tal como arriba relatamos, en ocasión de la solicitud de revisión administrativa en el caso 2023-472444-SDR-011410, la parte recurrente levantó como error y sometió evidencia durante la audiencia administrativa celebrada en ese caso para demostrar que la OGPe se equivocó al no realizar una consulta de ubicación, ni requerir una Declaración de Impacto Ambiental. Sin embargo, la División en dicho momento dejó sin efecto el permiso de construcción, no porque estos errores hubieran sido cometidos,

lo ordenado y sometido los estudios realizados, la OGPe evaluó el caso con la información de los estudios finales y determinó expedir el permiso de construcción condicionándolo al cumplimiento de las condiciones específicas que estos contienen. En conclusión, el primer error no fue cometido.

Similar conclusión alcanzamos en cuanto al segundo señalamiento de error. Es correcto que las disposiciones legales citadas por la parte recurrente establecen la necesidad de una Declaración de Impacto Ambiental cuando la acción propuesta conlleva un impacto significativo sobre el ambiente.[13] No obstante, más allá de meras alegaciones de su parte reclamando que la presencia de un mogote en el área concernida implica que la obra propuesta tendrá un impacto significativo al ambiente que exige tal declaración de impacto, el expediente no contiene prueba alguna que demuestre que así fue evidenciado ante la OGPe. Al igual que ocurrió con su primer señalamiento de error, el impacto significativo reclamado por la parte recurrente y la consecuente necesidad de una Declaración de Impacto Ambiental descansa en meras generalidades y la asunción de un decreto previo de susceptibilidad de deslizamiento realmente inexistente en el caso.

Ante ello, estimamos que la División actuó conforme a derecho, por lo que sostenemos la decisión recurrida.

**IV.**

Por las razones antes dadas y según adelantamos, **confirmamos** la determinación administrativa.

---

sino porque, dada la posible presencia de un mogote con cueva o caverna, se necesitaba un estudio geotécnico final, ordenando que este se realizara y considerara, previo a emitir el permiso.  Esta decisión, como todas las partes reconocen, es final y firme.

[13] Véase Artículo 10 de la Ley 292-1999, mejor conocida como Ley para la Protección y Conservación de la Fisiografía Cársica de Puerto Rico, 12 LPRA Sec. 1158; y Articulo 4(B) de la Ley 416-2004, mejor conocida como Ley Sobre Política Pública Ambiental, 12 LPRA Sec. 8001a(B).

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones